UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-62441-BLOOM/Valle**

ALEXISS WRIGHT, MARIA C. POZA,
JERRICK BUCK, and YVONNE BUCK,
*individuals, on behalf of themselves and
others similarly situated*,

       Plaintiffs,

v.

GREENSKY, INC.; GREENSKY, LLC;
GREENSKY HOLDINGS, LLC; and
GREENSKY MANAGEMENT
COMPANY, LLC,

       Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendants GreenSky, Inc., GreenSky, LLC,

GreenSky Holdings, LLC, and GreenSky Management Company, LLC's (collectively,

"Defendants") Motion to Compel Arbitration as to all Claims Asserted by Plaintiff Maria Poza

and to Dismiss or Stay Claims of Maria Poza Pending Arbitration, ECF No. [24] ("Motion to

Compel"), and Plaintiff Maria Poza's ("Plaintiff") Motion to Exclude from Consideration Exhibits

to Defendants' Reply in Support of Motion to Compel Arbitration, ECF No. [45] ("Motion to

Exclude"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all related

submissions, the record in this case, the applicable law, and is otherwise fully advised. For the

reasons set forth below, the Motion to Exclude is denied and the Motion to Compel is granted.

## I.  BACKGROUND

Plaintiff Alexiss Wright ("Wright") initiated this class action against Defendants on July

17, 2020, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* ECF No. [1-2] at 5-37. On December 1, 2020, Defendants removed the above-styled case to this Court, alleging jurisdiction under the Class Action Fairness Act ("CAFA") of 28 U.S.C. § 1332(d). ECF No. [1] ("Notice"). On December 16, 2020, Wright filed a First Amended Class Action Complaint, ECF No. [12] ("Amended Complaint"), which added Plaintiffs Maria Poza, Jerrick Buck, and Yvonne Buck as named plaintiffs. The Amended Complaint asserts the following three counts against each Defendant: Count I – Violations of Florida's Loan Broker Law (Fla. Stat. § 687.14, *et seq.*); Count II – Violations of Florida's Credit Service Organizations Act ("CSOA") (Fla. Stat. § 817.7001, *et seq.*); and Count III – Injunctive Relief. *See generally id.*

A general overview of the facts relevant to the instant Motions are as follows. Defendants are financial technology companies that allow various types of merchants, including home improvement contractors, to apply for point-of-sale loans on behalf of their customers through a mobile application that streamlines the entire lending process. They fund these loans through partnerships with lending institutions that serve as the lenders in these financing agreements. As such, Defendants orchestrate the loan origination process from the initial loan application through funding and, after brokering the loan, Defendants act as the loan servicer. The claims asserted in the Amended Complaint are premised upon Defendants allegedly concealing the nature and amount of the merchant fees charged to consumers and failing to comply with the disclosure requirements of credit services organizations.

On November 10, 2016, Plaintiff contracted with Paradise Exteriors for the purchase and installation of storm shutters, which was to be financed by a GreenSky-program loan. The Paradise Exteriors salesperson told Plaintiff that she could purchase custom shutters by making a down payment and financing the remaining amount, and Plaintiff ultimately agreed to do so. Plaintiff

provided Paradise Exteriors with the necessary personal information to complete the loan application, and she was ultimately approved for a loan from SunTrust Bank (the "Lender"). On February 28, 2017, Paradise Exteriors installed Plaintiff's storm windows, and Plaintiff began drawing down on the loan on March 4, 2017.

Central to the parties' dispute is the Installment Loan Agreement between the Lender and Plaintiff, *see* ECF No. [24-1] at 10-17 (the "Loan Agreement" or the "Agreement"), which contains an Arbitration Provision, *id.* at 13. Notably, although Plaintiff and the Lender are both parties to the Agreement, the Lender is the sole signatory. Defendants neither signed the Loan Agreement, nor were parties to it, but they did service and manage Plaintiff's loan transactions.

Defendants now file the Motion to Compel, arguing that the Loan Agreement contains a mandatory arbitration provision directing the parties to resolve any and all disputes through arbitration. ECF No. [24]. In support of their Motion to Compel, Defendants submitted the Declaration of Timothy D. Kaliban, ECF No. [24-1] ("Kaliban Declaration"), along with supporting documentation. Plaintiff filed her response in opposition to the Motion to Compel, ECF No. [39] ("Response"), which attached the Declaration of Maria C. Poza, ECF No. [39-1] ("Poza Declaration"), and two supporting exhibits, ECF Nos. [39-2] & [39-3]. Defendants submitted a Reply in Support of their Motion to Compel, ECF No. [43] ("Reply"), which appended two additional exhibits in response to Plaintiff's arguments, *see* ECF Nos. [43-1] & [43-2].

After Defendants' Motion to Compel was fully briefed, Plaintiff filed her Motion to Exclude, arguing that Defendants improperly submitted new evidence with their Reply that was previously available. As such, Plaintiff requests that this Court decline to consider the exhibits. *See* ECF No. [45]. Defendants take the opposing position. The Motion to Exclude is ripe for this Court's consideration. *See* ECF Nos. [46] & [47].

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties

have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

In addition, the Court of Appeals for the Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Therefore, in determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

## III. DISCUSSION

Defendants seek to compel arbitration of Plaintiff's claims, arguing that Plaintiff was on

notice of the terms and conditions of the Loan Agreement, including the Arbitration Provision and that, by drawing down the loan and making the loan installment payments, she further manifested her assent to be bound by the Agreement. Plaintiff responds that Defendants are not parties to the Agreement and therefore cannot compel her to arbitrate. Moreover, even if they can compel arbitration, she is not bound by the terms of the Agreement because did not assent to the Arbitration Provision. Plaintiff also seeks to exclude two exhibits that Defendants submitted with their Reply to the Motion to Compel, arguing that it is improper to raise new facts or arguments on reply.

The Court will independently address each of the Motions below. However, as the resolution of the Motion to Exclude affects the evidence the Court considers in ruling upon the Motion to Compel, the Court will begin its analysis of Plaintiff's Motion to Exclude.

**A. Plaintiff's Motion to Exclude**

Plaintiff takes issue with two of the exhibits Defendants submitted with their Reply to the Motion to Compel: (1) A GreenSky form titled Borrower Payment Certificate ("BPC") that was signed by Plaintiff and dated February 28, 2017—the day that Paradise Exteriors installed Plaintiff's storm windows—which acknowledges that Plaintiff received the Loan Agreement and agreed to be legally bound by the terms and conditions of that Agreement, *see* ECF No. [43-1]; and (2) A Credit Application signed by Plaintiff and dated November 10, 2016—the same day she submitted her loan application—which expressly identified GreenSky in the section of the form setting forth the prospective financing terms, *see* ECF No. [43-2]. These exhibits, Defendants argue, were submitted in order to rebut the statements in the Poza Declaration that (1) Plaintiff never heard of GreenSky when she applied for her loan on November 10, 2016; (2) Plaintiff did not know what GreenSky was when she took the loan; (3) Plaintiff was not presented with

arbitration terms when she applied for the loan; and (4) Plaintiff did not know that she would be agreeing to any terms and conditions by taking the loan. *See* ECF No. [39-1] ¶¶ 5-6. Plaintiff argues that this Court should decline to consider Defendants' exhibits because they present new evidence that was previously available, and the exhibits are inadmissible and have not been properly authenticated.

Local Rule 7.1(c) provides that a reply memorandum "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law." S.D. Fla. L.R. 7.1(c). Thus, "[a] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140-CIV, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014) (citing *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012); *TCC Air Servs., Inc. v. Schlesinger*, No. 05-80543-CIV, 2009 WL 565516, at *7 (S.D. Fla. Mar. 5, 2009)).

"A significant difference exists, however, between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other." *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012), *aff'd*, 523 F. App'x 651 (11th Cir. 2013). Indeed, Local Rule 7.1(c) does not prohibit the submission of rebuttal affidavits and declarations in support of a reply memorandum. *See* S.D. Fla. L.R. 7.1(c) ("All materials in support of any motion, response, or reply, including affidavits and declarations, shall be served with the filing."). Thus, while raising new arguments on reply is generally inappropriate, reply evidence "may contain facts not previously mentioned in the opening brief, as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues." *Giglio*

*Sub s.n.c.*, 2012 WL 4477504, at *2 (citing *Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d 1266, 1280-81 (S.D. Fla. 2002)); *see also ABCO Premium Fin. LLC v. Am. Int'l Grp.*, No. 11-23020-CIV, 2012 WL 3278628, at *4 (S.D. Fla. Aug. 9, 2012) ("While the 'raising of new issues and submission of new facts in reply brief is improper,' a court has the discretion to consider the additional exhibits despite this 'procedural shortcoming.'" (citation omitted)), *aff'd*, 518 F. App'x 601 (11th Cir. 2013); *Intra-Lock Int'l, Inc. v. Choukroun*, No. 14-cv-80930, 2015 WL 1268278, at *1 (S.D. Fla. Mar. 19, 2015).

Upon review of parties' briefing and the record evidence, the Court is unpersuaded that the challenged exhibits are improper attempts to raise new factual issues on reply. Rather, these submissions negate material issues of fact raised in the Poza Declaration and in Plaintiff's Response to the Motion to Compel. The evidence is therefore not newly submitted or otherwise improper. *See Giglio Sub s.n.c.*, 2012 WL 4477504, at *5 ("Nothing requires a party to submit all evidence known, no matter its relevance to the motion, at the time of filing a motion. Instead, regardless of the time learned, evidence constitutes rebuttal where it directly refutes a point raised for the first time in opposition to a motion."). As such, the Court will not exclude this evidence from its consideration of the Motion to Compel.

In addition, it is worth noting that Plaintiff's Motion to Exclude does not request leave to submit a sur-reply to respond to Defendants' "new" evidence. *See Health First, Inc. v. Capitol Specialty Ins. Corp.*, 230 F. Supp. 3d 1285, 1292-93 (M.D. Fla. 2017) (noting that, "[w]hile Plaintiffs aver that they have been deprived of an opportunity to respond to the letter, they did not request leave to file a sur-reply to address the contents of the letter"), *aff'd*, 747 F. App'x 744 (11th Cir. 2018) (citing *Lightsey v. Potter*, 268 F. App'x 849, 852 (11th Cir. 2008) (affirming the district court's reliance on evidence attached to a reply brief and noting that the party moving to strike the

declarations never sought leave to file a sur-reply); *United States v. Carter*, 506 F. App'x 853, 860 (11th Cir. 2013) ("[H]ad Carter wished to respond to the government's reply, she could have sought . . . leave to do so, but, as she did not, the [court] was free to rely on the evidence the government attached to its reply."))). Nevertheless, even assuming that Defendants' supplemental exhibits were, as Plaintiff argues, new pieces of evidence that were improperly submitted on reply, the Court fails to see how its consideration of this evidence in disposing of the Motion to Compel would prejudice Plaintiff.

Further, any contention that Plaintiff was not afforded an adequate opportunity to respond to Defendants' new evidence[1] is belied by the parties' complete briefing on the Motion to Exclude, which included extensive argument regarding the propriety of Defendants' evidence. *See* ECF Nos. [45], [46], & [47]; *see also Payne v. McCullough, Payne, & Haan, LLC*, No. 1:11-cv-02208-JEC-GGB, 2012 WL 13130211, at *2 (N.D. Ga. June 20, 2012) ("[A] court does have discretion to review such evidence [submitted on reply] provided that the opposing party is given an adequate opportunity to respond." (citing *Carpenters Health & Welfare Fund v. Coca-Cola*, No. 00-cv-2838, 2008 WL 11336214, at *3 (N.D. Ga. May 1, 2008))). Thus, the Court finds that Plaintiff was afforded a sufficient opportunity to respond to Defendants' supplemental evidence and to raise

---

[1] The Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn*, 992 F.3d at 1215 n.3. Moreover, in the context of motions for summary judgment, this Circuit recognizes "the importance of giving the nonmovant a meaningful opportunity to respond to a motion for summary judgment." *Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1516 (11th Cir. 1990).

> When faced with a reply brief that offers new evidence, [the Eleventh Circuit has] conclude[d] that the district court has two permissible courses of action. It can either (1) permit the nonmoving party to file a surreply or (2) refrain from relying on any new material contained in the reply brief. *Beaird*, 145 F.3d at 1164. But it may not preclude the nonmoving party from filing a surreply and then grant summary judgment based on new material presented only in the reply brief.

*Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901-02 (11th Cir. 2019).

any pertinent arguments regarding that evidence.

Plaintiff also argues that, should this Court consider Defendants' exhbits, they should nonetheless be excluded because these exhibits are neither competent nor admissible, and Defendants have failed to properly authenticate their submissions. Defendants respond that these exhibits are self-authenticating commercial paper or other relating documents under Federal Rule of Evidence 902(9) and are admissible without the need for further authentication.

> In ruling on a motion for summary judgment, a court may consider only evidence that would be admissible at trial. *White v. Wells Fargo Guard Servs.*, 908 F. Supp. 1570, 1577 (M.D. Ala. 1995). However, evidence produced for summary judgment need not be in an admissible form if it could be reducible to admissible form for trial. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1444 (11th Cir. 1991).[2]
>
> Generally, documents must be properly authenticated in order for them to be considered on summary judgment. *Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993). Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "To meet this standard, the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be." *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993). Thus, courts may look to other evidence in the case to determine whether a challenged document meets the standard of Rule 901. *See, e.g.*, *Itel Capital Corp.*

---

[2] "'Reduced to admissible form' includes hearsay that falls within an exception, statements admissible for their non hearsay use, and unauthenticated documents which are likely to be properly authenticated at trial." *MSC Mediterranean Shipping Co., S.A. v. Wall St. Sys.*, No. 1:11-cv-3570-ODE, 2013 WL 8227571, at *4 (N.D. Ga. May 9, 2013) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999); *Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366, 1377 (N.D. Ga. 2008)).

> Thus, even if the attached [exhibits are] not properly authenticated now, these materials are capable of being authenticated at trial. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. All Am. Freight, Inc.*, No. 14-cv-62262, 2016 WL 633710, at *6 (S.D. Fla. Feb. 17, 2016) ("There is no indication that the aforementioned Exhibits are incapable of authentication at trial. Accordingly, the Court declines to strike them and will consider them for the purposes of summary judgment."); *Warshauer v. Chao*, No. 4:06-cv-0103-HLM, 2008 WL 2622799, at *3 (N.D. Ga. May 7, 2008) (declining to disregard exhibits because it was "possible . . . that the Government [could] adduce sufficient evidence at trial to show that Rule 902 applies or to authenticate the exhibit in accordance with Federal Rule of Evidence 901").

*Holiday Hosp. Franchising, LLC v. J&W Lodging, LLC*, No. 1:17-cv-01663-ELR, 2019 WL 3334614, at *8 (N.D. Ga. Mar. 7, 2019).

*v. Cups Coal Co.*, 707 F.2d 1253, 1259 (11th Cir. 1983) (examining other evidence and determining document was properly admitted under Rule 901).

*APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1335 (N.D. Ga. 2004).

Although Plaintiff argues that Defendants' exhibits are unauthenticated and do not fall within a category of evidence that is self-authenticating, the Court notes that this argument seemingly disregards the long-standing principle that evidence need not be in admissible form at the summary judgment stage, as long as that evidence can be reduced to admissible form at trial. *See Macuba*, 193 F.3d at 1323 ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (internal quotation marks and citations omitted)); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (observing that "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial"); *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1182 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016). In fact, neither party has addressed the question of whether these exhibits are capable of being properly authenticated at trial or reduced to admissible form, but the Court finds no indication that these documents are incapable of proper authentication. *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (reading the United States Supreme Court's holding in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), "as simply allowing *otherwise admissible* evidence to be submitted in *inadmissible form* at the summary judgment stage, though at trial it must be submitted in admissible form.")).

Nevertheless, upon examination of the documents at issue, the Court is satisfied that Defendants' exhibits are what they purport to be. Specifically, these exhibits set forth information that matches the information in Defendants' other evidence in support of its Motion to Compel,[3]

---

[3] *Compare, e.g.*, ECF Nos. [24-1] at 8-36 (noting Plaintiff's application ID, home address, phone number,

Case No. 20-cv-62441-BLOOM/Valle

and on Plaintiff's own sworn statements in the Poza Declaration.[4] Likewise, Plaintiff's signature appears to be consistent across all of the documents in the record. *See* ECF Nos. [39-2], [43-1], & [43-2]. As such, the Court finds that Defendants' exhibits sufficiently "demonstrate a rational basis for [the] claim that the evidence is what the proponent asserts it to be." *Coohey*, 11 F.3d at 99. This evidence can likely be sufficiently identified and adequately connected to the circumstances of this case for the purpose of being considered in connection with the pending Motion to Compel. *See APA Excelsior III, L.P.*, 329 F. Supp. 2d at 1335-36.[5]

Lastly, and perhaps most telling, the Court notes that while Plaintiff argues that the exhibits should be excluded because they are not authenticated, she does not appear to challenge the documents on the basis that they are not what Defendants purport them to be or that they are otherwise altered, unreliable, or untrustworthy. *See McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1299 (M.D. Ga. 2003) ("Plaintiffs have not presented evidence sufficient to raise a question as to the authenticity, reliability or relevance of the submissions. The Court notes that Plaintiffs do not specifically contend that [the challenged exhibits] are anything other than what they purport to be."); *see also Cuevas v. Verizon Wireless Pers. Commc'ns, LLP*, No. 2:18-cv-371-FtM-99CM, 2018 WL 6011876, at *1 n.3 (M.D. Fla. Nov. 16, 2018) (denying a motion to exclude evidence as inadmissible and noting that "[t]he Customer Agreements [] show no indicia of unreliability and plaintiff has otherwise offered no evidence that the signed Customer Agreements are not

---

and e-mail address), *with* ECF No. [43-1] (same), *and* ECF No. [43-2] (same).

[4] *Compare* ECF No. [39-1] at 2, ¶ 9 (explaining that Paradise Exteriors installed Plaintiff's storm windows on February 28, 2017), *and* ECF No. [39-3] (Paradise Exteriors quality survey dated February 28, 2017), *with* ECF No. [43-1] (Plaintiff's signed GreenSky BPC, dated February 28, 2017, acknowledging receipt of the Loan Agreement and assent to its terms and conditions).

[5] In light of this holding, the Court need not address the parties' arguments as to whether such evidence is self-authenticating commercial paper or other related documents under Federal Rule of Evidence 902(9).

authentic"). The Court will therefore not exclude Defendants' exhibits absent some compelling and substantiated reason for doing so. *See Dunn v. Glob. Tr. Mgmt., LLC*, No. 8:19-cv-2223-WFJ-AEP, 2020 WL 7260771, at *9 (M.D. Fla. Dec. 10, 2020) ("[T]he Eleventh Circuit instructs that '[t]he touchstone of admissibility . . . is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence.'" (quoting *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006))).[6] Accordingly, the Court concludes that Plaintiff's Motion to Exclude must be denied.

## B. Defendants' Motion to Compel

As noted above, Defendants have also moved to compel Plaintiff to submit her claims to arbitration, arguing that these claims are subject to a binding Arbitration Provision within the Loan Agreement. Defendants also contend that they can properly invoke the terms of the Loan Agreement, despite being non-signatories, due to the broad language of the Arbitration Provision. Plaintiff disputes the representations that she received notice of the Arbitration Provision and assented to the terms of the Agreement, and asserts that Defendants cannot enforce the Agreement's terms because they were never parties to the Agreement.

The Arbitration Provision in this case states in relevant part:

> **ARBITRATION PROVISION Agreement to Arbitrate Disputes**: . . . . UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION (AS PROVIDED BELOW) NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION. . . . <u>Definitions</u>: As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky® Installment Loan Agreement as well as the relationship resulting from such Agreement ("the Agreement"), including the validity,

---

[6] Nevertheless, as explained below, the Court reaches the same conclusion on the Motion to Compel without considering these exhibits.

enforceability or scope of this Arbitration Provision or the Agreement. "Claim" also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other. As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement. <u>Initiation of Arbitration Proceeding / Selection of Administrator</u>: Any Claim will be resolved, upon election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with the Agreement. Claims must be referred to either JAMS or The American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. . . . <u>Opt-Out Process</u>: You may choose to opt out and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: PO Box 29429, Atlanta, Georgia 30359, Attention: Legal. Your written notice must include your name, address, social security number, the date of the Agreement, and a statement that you wish to opt out of this Arbitration Provision. Your notice to opt out will only apply to this particular Agreement with us and not to subsequent or previous agreements.

ECF No. [24-1] at 13 (underline added).

Generally, "[c]laims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement." *Citi Cars, Inc. v. Cox Enters., Inc.*, No. 17-cv-22190, 2018 WL 1521770, at *4 (S.D. Fla. Jan. 22, 2018) (citing *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986)). "Under both federal and Florida[7] law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) [whether] a written agreement exists between the parties containing an arbitration clause; (2) [whether] an arbitrable

---

[7] The parties appear to agree that Florida law applies to issues raised in the Motion to Compel, and the Eleventh Circuit has stated that "[i]f the parties litigate the case under the assumption that a certain law applies, [the Court] will assume that that law applies." *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). Accordingly, the Court will apply Florida law here.

issue exists; and (3) [whether] the right to arbitration has [] been waived." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)).[8]

Thus, in addressing the Motion to Compel, the Court must first determine whether there exists a valid agreement to arbitrate between the parties. *See Mitsubishi Motors Corp.*, 473 U.S. at 626; *see also Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-71 (explaining that challenges to the validity of the arbitration agreement, as opposed to challenges to the validity of the "contract as a whole," are generally for the court to decide); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854-55 (11th Cir. 1992) (holding that courts should typically decide threshold issues of whether an agreement exists), *abrogated in part on other grounds*, *Bazemore*, 827 F.3d at 1329-30. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29, 2011 WL 2893118, at *4 (M.D. Fla. July 20, 2011) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626).

Here, the Court must first determine whether a valid arbitration agreement exists that binds the parties before addressing whether the claims in this case are subject to arbitration.

### 1. Existence of a Valid Arbitration Agreement

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*, 473 U.S. at 626. The threshold determination of whether an arbitration agreement exists at all is "simply a matter of contract." *First Options of Chi., Inc.*, 514 U.S. at 943. State law governs when determining whether an enforceable agreement to arbitrate exists. *Bazemore*, 827 F.3d at 1329.

---

[8] There is no dispute that Defendants have not waived their right to arbitrate in this case.

"Under Florida law, the party seeking to enforce arbitration has the burden of proving 'offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence.'" *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 WL 5647009, at *6 (S.D. Fla. Mar. 13, 2020) (quoting *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009)), *report and recommendation adopted*, No. 18-61877-CIV, 2020 WL 5647051 (S.D. Fla. Apr. 2, 2020). Likewise, "mutual assent is a prerequisite for the formation of any contract." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract.")). "Mutual assent is not necessarily an independent 'element' unto itself; rather, [courts] evaluate the existence of assent by analyzing the parties' agreement process in terms of offer and acceptance." *Id.* (footnote omitted) (citing *Newman v. Schiff*, 778 F.2d 460, 465 (8th Cir. 1985)).[9]

"A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words or inferred in whole or in part from the parties' conduct." *Kolodziej*, 774 F.3d at 741 (citing *L&H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011)). Florida courts employ "an objective test . . . to determine whether a contract is enforceable." *See Robbie v. City of Mia.*, 469 So. 2d 1384, 1385 (Fla. 1985). In other words, "the test of the true interpretation of an offer or acceptance is not what the party making it

---

[9] "[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Sundial Partners, Inc. v. Atl. Street Cap. Mgmt. LLC*, No. 8:15-cv-861-T-23JSS, 2016 WL 943981, at *5 (M.D. Fla. Jan. 8, 2016) (citing 9 U.S.C. § 2; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). Furthermore, Florida law does not require an arbitration agreement to contain a signature and, "a contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner." *Lawhon v. Aaron's, Inc.*, No. 8:19-cv-2333-T-36JSS, 2020 WL 2219665, at *8 (M.D. Fla. May 7, 2020); *see also Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004) ("The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror.").

thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Sundial Partners, Inc.*, 2016 WL 943981, at *4.

The parties' disputes on this issue can generally be summarized as (1) whether Defendants can enforce the Arbitration Provision as non-signatories to the Agreement; and (2) whether Plaintiff received adequate notice of the terms of the Agreement, including the Arbitration Provision, and assented to those terms.

### a.  Enforcement of Arbitration Provision by Non-Signatory Defendants

Regarding the question of who is bound under the terms of the Arbitration Provision, Defendants argue that based on the Arbitration Provision's plain language, despite that they are non-signatories to the Agreement, they may properly compel arbitration in their capacities as agents of the Lender and/or as third parties providing services in connection with the Agreement. Thus, Defendants contend that the language of the Agreement itself establishes their right to enforce the Arbitration Provision against Plaintiff. Alternatively, if they cannot enforce the Arbitration Provision as non-signatories, Defendants assert that compelling Plaintiff to submit her claims to arbitration is appropriate based on the theory of equitable estoppel. Plaintiff responds that the terms of the Loan Agreement only bind Plaintiff and the Lender, and Defendants cannot establish that they acted as agents to the Lender or that equitable estoppel applies in this case.

The Eleventh Circuit has recognized the rule under Florida contract law "that one who is not a party to an agreement cannot enforce its terms against one who is a party . . . . The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011) (citations omitted). In the arbitration context, "arbitration is a matter of contract [and] the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to

arbitrate." *Id.* at 1170 (alteration in the original) (citations omitted). However, "an exception to that rule is that a nonparty may force arbitration 'if the relevant state contract law allows him to enforce the agreement' to arbitrate." *Id.* (quoting *Arthur Anderson LLP*, 556 U.S. at 632). In certain circumstances, a non-signatory to a contract may have the legal right to enforce its provisions "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Anderson LLP*, 556 U.S. at 631. Accordingly, "state law provides the rule of decision" on whether a non-signatory can enforce an arbitration clause against a signatory. *Id.*

Consistent with Florida law, "courts recognize that, under a variety of circumstances, non-signatories may compel arbitration, including (1) based on the equitable estoppel doctrine and (2) when the non-signatory is referenced in, or is a third party beneficiary to, the agreement to arbitrate." *Tyman v. Ford Motor Co.*, No. 20-22485-CIV, 2021 WL 786065, at *4 (S.D. Fla. Feb. 23, 2021) (citing *Arthur Anderson LLP*, 556 U.S. at 631). Defendants have the burden of producing the Arbitration Provision and establishing the contractual relationship necessary to grant this Court the authority to compel arbitration. *See Newman v. Hooters of Am., Inc.*, No. 8:06-CIV-364-EAK-TGW, 2006 WL 1793541, at *2 (M.D. Fla. June 28, 2006); *see also Wexler v. Solemates Marine, Ltd.*, No. 16-cv-62704, 2017 WL 979212, at *4 (S.D. Fla. Mar. 14, 2017).

Defendants argue that they can properly compel arbitration, despite being non-signatories, because the broad language of the Arbitration Provision demonstrates the signatories' intent not to narrow the scope of the Arbitration Provision.

With regard to a Claim that can be brought under the Loan Agreement,

As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky® Installment Loan Agreement as well as the relationship resulting from such Agreement ("the

Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement. "Claim" also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other.

ECF No. [24-1] at 13.

Additionally, as Defendants rightly note, the Arbitration Provision broadly defines the parties subject to the Agreement, stating that,

As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing *and any third party providing any product, service or benefit in connection with the Agreement*.

ECF No. [24-1] at 13 (emphasis added).

"Florida courts have broadly construed arbitration provisions containing the language, 'arising out of or relating to,' to encompass claims of nonsignatories." *Murdock v. Santander Consumer USA Inc.*, No. 2:15-cv-268-FtM-38CM, 2016 WL 11467548, at *6 (M.D. Fla. June 23, 2016), *report and recommendation adopted*, No. 2:15-cv-268-FtM-38CM, 2016 WL 3913135 (M.D. Fla. July 20, 2016); *see also Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (noting that such broad clauses "evince[] a clear intent to cover more than just those matters set forth in the contract"). Likewise, there is no dispute that Defendants have acted as the loan servicers on the loan from which this Arbitration Provision arises for the duration of the signatories' relationship. Notably, although she opposes the characterization that Defendants acted as agents of the Lender under the Agreement, Plaintiff makes no meaningful attempt to refute Defendants' argument that they are "third part[ies] providing . . . service[s] . . . in connection with the Agreement." ECF No. [24-1] at 13; *cf. Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1357 (S.D. Fla. 2011)

("[I]n defining 'us' as referring only to certain enumerated categories of individuals, the parties evinced a clear intent that the arbitration provision only apply to disputes between Plaintiff and those specific individuals. Consequently, the Court will not construe the provision as limitlessly expanding that definition.").

Notably, the District Court for the Northern District of California recently reached the same conclusion when faced with the identical arbitration provision, explaining that, "[b]y servicing the loan memorialized in the loan agreement containing the Arbitration Provision, GreenSky is at least 'a third party providing any product, service or benefit in connection with the Agreement.'" *Belyea v. GreenSky, Inc.*, No. 20-cv-01693-JSC, 2021 WL 1338552, at *3 (N.D. Cal. Apr. 9, 2021). The Court agrees with the reasoning in *Belyea* and concludes that Defendants "fall[] within the Arbitration Provision's definition of 'us,'" and they may properly move to compel arbitration under the Agreement. *Id.*[10] Moreover, because this Court concludes that Defendants can properly invoke the Arbitration Provision, it need not address the remaining argument regarding equitable estoppel.

### b. Plaintiff's Notice and Assent to the Terms of the Agreement

Next, Defendants argue that Plaintiff had notice of the Arbitration Provision's terms and manifested her assent to be bound by those terms because that the Loan Agreement, which

---

[10] Although Plaintiff contends that the Arbitration Provision limits a non-signatory's ability to compel arbitration only to instances where the Lender is also a co-party, *see* ECF No. [24-1] at 13 ("'Claim' also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement . . . if and only if, such third party is named as a co-party with you or us[.]"), the Court reiterates what the district court explained in *Belyea*: "the 'if and only if' clause in the Arbitration Provision relates to *what* claims may be brought, not *who* is a party to the Arbitration Provision in the first place." 2021 WL 1338552, at *3. As such, the impact of the "if and only if" clause raises a question of arbitrability that must be left to the arbitrator, as explained in more detail below. *See Corbin v. Affiliated Comp. Servs.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, at *3 (M.D. Fla. July 19, 2013) ("In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts while at the same time, taking into consideration the federal policy favoring arbitration.").

contained the Arbitration Provision, was mailed by the United States Postal Service to Plaintiff at the address she provided in her loan application, and Defendants did not receive any returns or notifications of undeliverable mail relating to Plaintiff's loan.[11] The Kaliban Declaration states that Defendants sent other mailings to the same address provided on the loan application, including billing statements for Plaintiff's loan repayment, and Plaintiff has made regular online payments through the GreenSky Customer Self Service Portal ("CSSP"). ECF No. [24-1] at 6, ¶¶ 28-32. Defendants therefore argue that the presumption an item properly mailed was received (i.e., the mailbox rule) applies in this case. Defendants further note that the Arbitration Provision includes an opt-out provision, and contend that, upon receiving the terms and conditions of the Loan Agreement, Plaintiff manifested her acceptance of the Arbitration Provision by failing to timely opt out. Similarly, once she began utilizing the services provided and drawing on the loan to pay Paradise Exteriors, Plaintiff accepted and agreed to be bound by the terms of the Arbitration Provision. Accordingly, Defendants argue that Plaintiff had notice of the Arbitration Provision and assented to its terms through her subsequent conduct.

Plaintiff first responds that there is a genuine issue of material fact regarding whether she received the Loan Agreement that Defendants allegedly mailed, and she points to her statements in the Poza Declaration where she states, in relevant part, that she "do[es] not recall receiving any mail from [Defendants] after taking the loan" and that, if she had received any documents, it was her practice to keep such documents. ECF No. [39-1] ¶ 7. Furthermore, Plaintiff disagrees with Defendants' argument that she accepted the terms of the Arbitration Provision by failing to opt out. Plaintiff contends that the terms and conditions of the Loan Agreement were later-provided

---

[11] Defendants submit the sworn Declaration of Timothy D. Kaliban, the President and Chief Risk Officer of GreenSky, LLC, to attest to the loan application process, both generally and as applied in Plaintiff's case, and to the subsequent mailing procedures and communications with Plaintiff about her loan. *See generally* ECF No. [24-1].

terms that were not part of her original agreement to purchase storm windows from Paradise Exteriors with financing. Her silence as to these later-provided terms cannot, as Plaintiff contends, establish acceptance where the original contractual obligations remain unchanged. Therefore, Plaintiff argues that the Arbitration Provision cannot be enforced against her because it was never a contractual term to which she agreed.

### i. The Mailbox Rule

First, the Court addresses whether Defendants are entitled to a presumption under the mailbox rule that Plaintiff received the Loan Agreement that was mailed to her.

> "The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." *Bazemore*, 827 F.3d at 1331 n.2 (alteration adopted). A party may take advantage of the mailbox rule's presumption by showing that "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed." *In re E. Coast Brokers & Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir. 1992).
>
> A party may establish these requisites in two different ways. First, it may present evidence, based on personal knowledge, that the document was in fact placed in the mail. *Bazemore*, 827 F.3d at 1331. Second and alternatively, a party may invoke the mailbox rule based on "[t]estimony concerning specific office procedures for preparing and mailing notices in addition to evidence of mail received from the purported sender at the same address (and by other designated recipients in the normal course)[.]" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005); *see also E. Coast Brokers & Packers*, 961 F.2d at 1545-46. But that too requires more than "unsupported conclusory assertions of an individual based on his assumption of how mail was handled in the normal course of business[.]" *E. Coast Brokers & Packers*, 961 F.2d at 1545.

*Mason v. Midland Funding LLC*, 815 F. App'x 320, 326 (11th Cir. 2020) (emphasis omitted).

Turning to the applicability of the mailbox rule in this case, the Kaliban Declaration explains that, on November 11, 2016—the day after Plaintiff applied and was approved for the loan—a printed copy of the Loan Agreement was mailed to the address Plaintiff provided in her loan application. ECF No. [24-1] at 4, ¶ 21. A true and correct copy of the Loan Agreement that was sent to Plaintiff is attached to the Declaration. *Id.* at 10-17. The Kaliban Declaration also explains the procedures Defendants use for preparing the loan agreement packets that are mailed

Case No. 20-cv-62441-BLOOM/Valle

to customers:

> GreenSky's mailing of the printed copy of the Loan Agreement to Ms. Poza was, and is, consistent with GreenSky's customary business practices for borrowers whose loans GreenSky services. . . . Specifically, the Loan Agreement mailing was properly addressed to Ms. Poza and had sufficient postage, and it was deposited in the U.S. Mail. This process is consistent with GreenSky's procedures for preparing and having mailed loan agreements to its customers. . . . The return address on the envelope identified "GreenSky" as the sender with P.O. Box 29429, Atlanta, GA 30359. This mailing was not returned to GreenSky as undeliverable and GreenSky did not receive any returned any [sic] notifications that the Loan Agreement or any other mailings associated with Poza's loan account were undeliverable.

*Id.* at 5, ¶¶ 23-25. The Kaliban Declaration states that "GreenSky's vendor, SourceLink, mailed the package on behalf of GreenSky containing the Loan Agreement directly to the physical address the borrower provided as part of her application." *Id.* at 5, ¶ 22.

Mr. Kaliban explains that Defendants subsequently mailed additional hard copies of billing statements for the loan repayment by U.S. Mail directly to Plaintiff at the same address, which were not returned as undeliverable. *Id.* at 5-6, ¶¶ 25, 29. He states that Plaintiff has accessed the CSSP, managed her online account, and made regular payments toward the loan through her CSSP account. *Id.* at 6, ¶¶ 30-32. These facts, Defendants argue, satisfy the mailbox rule and create a presumption that Plaintiff received the Loan Agreement.

Plaintiff, however, contends that Defendants cannot establish that the Agreement was actually mailed, as Defendants used a third-party vendor to mail the envelope to Plaintiff on Defendants' behalf. She also argues that Mr. Kaliban lacks sufficient personal knowledge of the circumstances surrounding the purported mailing of her Agreement. Moreover, in the Poza Declaration, Plaintiff states that she does not recall receiving any mail from GreenSky after taking the loan and that, had she received any documents, she would have saved them. ECF No. [39-1] ¶ 7. Nor does she recall taking any further action on the loan until March 2017,[12] when she first

---

[12] This date is taken from Defendants' records of Plaintiff's online CSSP activity, *see* ECF No. [24-1] at

logged into the CSSP to begin making payments on the loan. *Id.* ¶ 9. Nevertheless, Plaintiff attests that Paradise Exteriors installed the windows on February 28, 2017. *Id.* ¶ 9. Based on these additional facts, Plaintiff argues that the presumption of receipt under the mailbox rule is genuinely in dispute, and that Defendants cannot satisfy their burden of establishing that she had notice of the Arbitration Provision.

Upon review of the record evidence, the Court concludes that the Kaliban Declaration and corresponding attachments sufficiently create a presumption that Plaintiff received the Loan Agreement that was mailed to her in November 2016. Specifically, the Kaliban Declaration states that package was produced in a manner consistent with Defendants' customary business practices, it had adequate postage and correct mailing and return addresses, it was not returned as undeliverable, and subsequent billing statements were mailed to the same address, which Plaintiff ultimately paid. Defendants also provided a true and correct copy of the Agreement that was mailed, ECF No. [29-1] at 10-17, along with numerous other supporting documents relating to Plaintiff's CSSP transaction, billing, and payment history, *id.* at 18-39. Although the Kaliban Declaration does not, as Plaintiff notes, set forth any personal knowledge that SourceLink did, in fact, place the Loan Agreement package in the mail, it does describe the specific procedures Defendants use for preparing and mailing loan packages and points to supporting evidence that Plaintiff received other billing statements that were mailed to her from GreenSky. This satisfies the requirements of the mailbox rule. *Cf. Mason*, 815 F. App'x at 329 ("Though describing a company's mailing procedure is one way to trigger the mailbox presumption, it is not the only way. An equally effective way is to submit evidence showing that the [] Card Agreement was placed in the mail."). Thus, Defendants are entitled to a presumption that the Loan Agreement was

---

23, 36, and Plaintiff did not dispute this date in her response to the Motion to Compel.

received, which Plaintiff must rebut through the submission of her own contradictory evidence.

Plaintiff, however, has failed to rebut the presumption of receipt in this case. The Poza Declaration provides no information beyond the conclusory statement, unsubstantiated by any corroborating evidence, that Plaintiff "do[es] not recall receiving any mail from GreenSky after taking this loan. If I had received documents related to this transaction, I would have saved them, as was my practice." ECF No. [39-1] ¶ 7.[13] Indeed, simply stating that a plaintiff "does not recall" receiving any mail from an opposing party falls woefully short of creating a genuine issue of fact on the question of whether the plaintiff had notice of the terms of an agreement. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017) ("Johnson does not claim that he did not receive the document, nor does he present any evidence to suggest as much. He merely asserts that he cannot recall whether he received a copy of that document. His lack of memory is insufficient to create a genuine dispute of fact."); *see also Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1364-65 (S.D. Fla. 2008) (explaining the presumption that a cardholder received a mailed credit card agreement and the requirement that the cardholder present substantiating evidence to overcome the presumption).

Moreover, Plaintiff's conclusory assertion that she would have kept any loan documents she had received does not raise any genuine questions of fact, especially in the absence of

---

[13] Conclusory allegations without specific supporting facts have no probative value. *See Word v. AT&T*, 576 F. App'x 908, 916 (11th Cir. 2014) ("Because 'mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion,' Plaintiff's affidavit, standing alone, was not enough to survive Defendant's motion for summary judgment."). "The Court can disregard an unsupported affidavit that contradicts the evidence." *Hall v. Sunjoy Indus. Grp.*, 764 F. Supp. 2d 1297, 1304 (M.D. Fla. 2011); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) ("[Plaintiff's] conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment."). Likewise, "[c]onclusory factual allegations, even when under oath, are not sufficient to oppose a motion for summary judgment[.]" *Villas of Lake Jackson, Ltd. v. Leon Cnty.*, 884 F. Supp. 1544, 1548 n.2 (N.D. Fla. 1995). Indeed, "[s]uch unsubstantiated, conclusory allegations are insufficient to survive summary judgment" when contradicted by the record. *Kloha v. Duda*, 246 F. Supp. 2d 1237, 1242 (M.D. Fla. 2003).

supporting evidence of other documents Plaintiff saved that related to the Loan Agreement (including documents from the Lender or other entities related to the loan).[14] Plaintiff also fails to address Mr. Kaliban's statement that Defendants mailed additional billing statements for the repayment of the loan to Plaintiff at the same address, which she appears to have received and subsequently paid online through her CSSP account. Plaintiff's unsubstantiated denials do not, absent some additional evidence, create an issue of material fact that would rebut the presumption of receipt. *See, e.g.*, *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07-cv-918, 2008 WL 150479, at *6 (M.D. Fla. Jan. 14, 2008) (the plaintiffs' affidavits simply stating they did not receive the agreements were insufficient to create a genuine issue of fact as to whether an agreement was reached because they did "not rise to the level necessary to rebut the presumption of receipt created when such Arbitration Notices were mailed to Plaintiffs"); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21 (S.D. Fla. 2006) (same). As such, the Court presumes that Plaintiff received the Loan Agreement and was therefore on notice of the Arbitration Provision.[15]

---

[14] The Court notes that the two exhibits Plaintiff attaches to the Poza Declaration were provided to her by Paradise Exteriors relating to her storm window purchase. Those documents do not contain any pertinent information about her Loan Agreement with the Lender. *See* ECF Nos. [39-2] & [39-3]. In addition, Plaintiff fails to submit copies of, for example, any billing statements or communications related to registering for a CSSP account. Indeed, Plaintiff does not provide a single piece of evidence that reflects, at a minimum, the application ID or account number associated with her loan.

[15] It is also worth noting that the evidence discussed above is sufficient, on its own, to demonstrate that Plaintiff was on notice of the Arbitration Provision. Here, however, Defendants also submitted Plaintiff's signed BCP, which acknowledged receipt of the Loan Agreement and agreed to the terms and conditions within that Agreement. ECF No. [43-1]. This executed BCP is dated February 28, 2017, which was the same day that Paradise Exteriors installed Plaintiff's storm windows, and it sets forth Plaintiff's loan amount, the account number associated with the loan, and the date of expiration on the loan, all of which match the information set forth in the loan documents and records that Defendants submitted.

Florida law recognizes that a valid agreement to arbitrate exists where a plaintiff has signed an acknowledgment of receipt and assent to the terms and conditions of a separate Agreement. *See Fantis v. Flywheel Sports, Inc.*, No. 18-24934-CIV, 2019 WL 1582957, at *8 (S.D. Fla. Mar. 11, 2019) ("[T]here are certain circumstances where Florida law requires a party to a contract to inquire further about missing documents and [] in those circumstances, a party cannot later disavow receipt of a particular document. For example, where a party has signed a document acknowledging that he or she was provided with a copy of all documents to an agreement and later claims that he or she did not receive a specific document."), *report*

### ii.  Opt-Out Provision and Continued Use of Loan Services

Defendants also argue that a valid agreement to arbitrate exists between the parties because

Plaintiff consented to be bound by the Arbitration Provision when she failed to opt out as required

under the Agreement. Specifically, the Arbitration Provision's opt-out clause states:

> You may choose to opt out of and not be subject to this Arbitration Provision but
> only by following the process set forth below. If you do not wish to be subject to
> this Arbitration Provision, then you must notify us in writing within forty-five (45)
> calendar days of the date of the Agreement at the following address: PO Box 29429,
> Atlanta, Georgia 30359, Attention: Legal. Your written notice must include your
> name, address, social security number, the date of the Agreement, and a statement
> that you wish to opt out of this Arbitration Provision. Your notice to opt out will
> only apply to this particular Agreement with us and not to subsequent or previous
> agreements.

ECF No. [24-1] at 13. Thus, Defendants take the position that, pursuant to the language of the

Arbitration Provision, Plaintiff's failure to opt out constituted assent to the agreement to arbitrate.

Plaintiff disagrees. Although she does not dispute the fact that she failed to opt out within

the time allotted under the Agreement, Plaintiff contends that she was under no obligation to do

so. Instead, she explains that the Arbitration Provision was an additional contractual term that she

---

*and recommendation adopted*, No. 18-cv-24934, 2019 WL 2245417 (S.D. Fla. Apr. 29, 2019); *In re Mona Lisa at Celebration, LLC*, 472 B.R. 582, 634 (Bankr. M.D. Fla. 2012) (noting that "[u]nder Florida law, when a buyer signs a contract acknowledging the receipt of all required documents, and then later claims a developer did not provide them, he is bound by the contract's terms and cannot rescind"), *aff'd*, 495 B.R. 535 (M.D. Fla. 2013). This principle holds true, even where the plaintiff failed to review the terms referenced or was not provided with the separate terms. A signed acknowledgment and assent are sufficient to establish that a valid agreement to arbitrate exists between the parties. Therefore, Plaintiff's signed BCP acknowledging receipt of and assent to the terms of the Agreement provides an additional basis upon which to conclude that the parties agreed to the Arbitration Provision.

Nonetheless, in light of Plaintiff's disputes regarding the authenticity of the BCP that were addressed on the Motion to Exclude, the Court independently concludes that Plaintiff was put on notice of the Arbitration Provision once she received the copy of the Loan Agreement that Defendants mailed to her. *See also Cheshire v. Fitness & Sports Clubs, LLC*, 382 F. Supp. 3d 1329, 1333 (S.D. Fla. 2019) (noting that "the nature of a gym and a gym membership would have reasonably put Plaintiff on notice that a document related to such a membership would include provisions such as an arbitration provision" (citing *Nat'l Fed'n of the Blind v. Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018) (holding that if a contract is of a nature where such terms are expected, a plaintiff may be charged with constructive notice of the clause's existence))).

was not notified of until after she entered into the original contract.[16] Any additional terms supplied to her after she entered into this initial November 10, 2016 loan agreement, according to Plaintiff, constitute later-provided terms that cannot be accepted through her silence or her failure to opt out. Thus, Plaintiff argues that she did not manifest her assent to any additional contractual terms, and her silence cannot be construed as acceptance absent some additional benefit or ongoing service provided in exchange.

Before turning to Plaintiff's failure to opt out, the Court first notes that there is an important distinction between November 10, 2016—the date on which Plaintiff applied for and obtained financing—and March 4, 2017—the date on which Plaintiff used the loan proceeds and authorized Paradise Exteriors to charge her account for the remaining balance owed for the windows. To be sure, the date of Plaintiff's loan approval is certainly relevant to establish when Plaintiff originally agreed to the take out the loan and assented to its terms. Nevertheless, as numerous provisions of the Agreement make clear, Plaintiff neither accepted the terms of the loan, nor incurred any obligations thereunder until she chose to draw upon the loan amount. *See* ECF No. [24-1] at 10-11 (stating in numerous places on the document that use of the funds would constitute acceptance of the Loan Agreement terms).[17] In this case, the Court has concluded that Plaintiff is presumed to have received the copy of the Loan Agreement that Defendants mailed her in November 2016.

---

[16] Curiously, Plaintiff appears to argue, in certain portions of her Response, that the relevant agreement is her November 10, 2016 contract with Paradise Exteriors for the purchase of storm windows, in which Paradise Exteriors agreed to secure financing on her behalf for a portion of the cost of the windows. *See* ECF No. [39] at 23-24; ECF No. [39-2] (Paradise Exteriors Contract Agreement). Plaintiff's purchase order for the storm windows contains only a passing note regarding the financing arrangement, but is otherwise irrelevant to the questions before the Court today. Thus, to the extent that Plaintiff relies on the purchase order to establish the existence of her original loan terms, such reliance appears to be misplaced.

[17] Plaintiff raised similar points in her Motion to Exclude while arguing that the Loan Agreement was not self-authenticating commercial paper. *See* ECF No. [47] at 8 ("[The Loan Agreement] is conditional—the borrower has no obligation unless she draws on this line of credit. . . . [In addition,] because it is a line of credit, the borrower is not promising to pay a 'fixed amount of money.'").

Case No. 20-cv-62441-BLOOM/Valle

Further, in the Poza Declaration, Plaintiff attested to the fact that she took no further action on the loan from the date of her approval until the date she accessed the CSSP to begin making payments online in March 2017. Based on these facts, it is evident that Plaintiff received notice of the terms and conditions of the Loan Agreement, including the Arbitration Provision, prior to drawing on the loan and accepted the terms of the Agreement in March 2017.[18]

Having established that Plaintiff had notice of the terms and conditions of the Loan Agreement prior to her acceptance of the Agreement, the Court will now address the opt-out clause as it relates to the instant action.

> "In Florida, it is well-settled that the offeror may specify the terms and manner of acceptance." *Id.*; *see Holloway v. Gutman*, 707 So. 2d 356, 357 (Fla. 5th DCA 1998) ("The acceptance of an offer, to result in a contract, must be . . . in the mode, at the place, and within the time expressly or impliedly required by the offer."). A contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner. *Sundial Partners, Inc. v. Atl. Street Capital Mgmt. LLC*, No. 8:15-cv-861-T-23JSS, 2016 WL 943981, at *5 (M.D. Fla. Jan. 8, 2016) (Sneed, Mag.) (citing *Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461, 463 (Fla. 1st DCA 1971)). Indeed, because the offeror is not required to limit the manner of acceptance to an affirmative response, "a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time." *Dorward*, 2011 WL 2893118, at *10.

*Lawhon*, 2020 WL 2219665, at *8.

Defendants rightfully note that the opt-out clause was simply another avenue through which Plaintiff could have chosen to communicate her unwillingness to arbitrate and it is undisputed that Plaintiff failed to properly opt out within the forty-five-day limit. Thus, the Court finds that Plaintiff's failure to opt out further evidences her agreement to the Arbitration Provision.

---

[18] Under Florida law, "a party to a contract is 'conclusively presumed to know and understand the contents, terms, and conditions of the contract.'" *Rocky Creek Ret. Props. v. Est. of Fox*, 19 So. 3d 1105, 1109 (Fla. 2d DCA 2009) (quoting *Stonebraker v. Reliance Life Ins. Co. of Pittsburgh*, 123 Fla. 244, 166 So. 583, 584 (Fla. 1936)). Further, "[a] party has a duty to learn and know the contents of an agreement before [accepting] it, and [a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before [accepting]." *Id.* (internal quotation marks and citation omitted).

Nevertheless, Plaintiff argues that Florida law does not permit silence to constitute acceptance, especially in the absence of some additional exchange of obligations or benefits. This statement, while generally true, is inapplicable in this instance. As explained above, Plaintiff received notice of the terms and conditions in the Agreement by mail and had ample time to review those terms before she began drawing down the loan proceeds. Once she initiated the transaction to reimburse Paradise Exteriors, Plaintiff communicated her acceptance of all of the terms in the Loan Agreement, including those in the Arbitration Provision.[19] Nevertheless, if she wished to avoid being subjected to the Arbitration Provision, she had an additional mechanism through which to opt out.[20] Rather than exercising that option, Plaintiff continued utilizing the loan proceeds and services, which further manifested her intent to arbitrate any claims.

Moreover, because Defendants have "show[n] the existence of an agreement, the burden shifts to the party opposing arbitration to 'show that no valid contract existed.'" *Mattson v. WTS Int'l, Inc.*, No. 8:20-cv-1245-CEH-AEP, 2021 WL 1060211, at *7 (M.D. Fla. Mar. 20, 2021) (quoting *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016)). "To meet that burden, a non-moving party must 'unequivocally deny that an agreement

---

[19] Notably, the Loan Agreement states that "[t]he first use of the Shopping Pass, Purchasing Card, or the associated installment loan to make a purchase will constitute acceptance by (all) Borrower(s) of the Terms of this Installment Loan Agreement. The dated physical or electronic record of such use will evidence the signature of (all) Borrower(s) on this Agreement." ECF No. [24-1] at 11.

[20] To the extent that Plaintiff attempts to argue that the Arbitration Provision constitutes a new term to the Agreement without proper consideration, such an argument is without merit. "[M]utual promises and obligations are sufficient consideration to support a contract." *Caley*, 428 F.3d at 1376; *see also Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same"); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008). "In Florida, one party's promise to submit its claims to arbitration typically provides sufficient consideration to support the other party's promise to submit its claim to arbitration." *Tranchart v. Ritz Carlton Hotel Co., LLC*, No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734, at *4 (M.D. Fla. Mar. 30, 2011). "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwailer*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005).

to arbitrate was reached and must offer some evidence to substantiate the denial.'" *Id.* (quoting *Magnolia Cap. Advisors v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). Plaintiff has failed to provide any unequivocal denial of an agreement to arbitrate in this case, and the statements she has submitted fail to substantiate her position. *See Muckle v. Healthcare Support Staffing, Inc.*, No. 6:15-cv-1391-Orl-28TBS, 2016 WL 3003217, at *1 (M.D. Fla. May 23, 2016) ("For instance, an arbitration clause that is included in an otherwise unsigned [] agreement is generally enforceable where both parties do their 'best to comply with the terms of the agreement,' including paying under the terms of the unsigned contract." (quoting *H.W. Gay Enters., Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580, 581 (Fla. 4th DCA 2001))).

In sum, the Court concludes that Plaintiff received adequate notice of the terms and conditions in the Loan Agreement and the Arbitration Provision. Through Plaintiff's subsequent conduct of drawing on the loan and making payments under the terms of that loan, she assented to the terms of the Arbitration Provision.

## 2. Arbitrability

Having determined that the parties are bound by a valid agreement to arbitrate, the Court turns to the application of the delegation provision and the question of whether arbitrable issues exist. *See Seminole Cnty. Tax Collector v. Domo, Inc.*, No: 6:18-cv-1933-Orl-40DCI, 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019); *see also Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018). The Supreme Court has explained that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. An agreement to arbitrate questions of arbitrability, which is "typically referred to as a 'delegation provision,'" *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017), is "simply an

additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. When "an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell*, 804 F.3d at 1144. "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016). Stated differently, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

"The question of whether the parties have agreed to allow arbitrators to decide the issue of arbitrability is essentially a question of contract law in which federal courts apply ordinary state-law contract principles," in order to give effect to the parties' intent. *MedPartners, Inc.*, 203 F.R.D. at 683 (citing *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998)). Nevertheless, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc.*, 514 U.S. at 944 (alterations omitted) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649); *see also JPay, Inc.*, 904 F.3d at 939. "When parties clearly and unmistakably defer the issue of arbitrability to the arbitrator, however, the court should compel arbitration without assessing the arbitration agreement's validity or scope." *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 588284, at *2 (M.D. Fla. Feb. 6, 2020) (citing *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005)).

Here, the Arbitration Provision states in relevant part that,

> As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky® Installment Loan Agreement as well as the relationship resulting from such Agreement ("the Agreement"), *including the validity, enforceability or scope of this Arbitration Provision or the Agreement*.

ECF No. [24-1] at 13 (emphasis added). This contractual language clearly evinces an intent to have the arbitrator decide issues concerning the validity, enforceability, and/or scope of the Loan Agreement itself and of the Arbitration Provision.[21] Thus, any remaining disputes regarding the parties' rights and obligations under the Agreement must be submitted to the arbitrator.

Additionally, the Eleventh Circuit has also held that, "when parties incorporate the rules of [JAMS or the American Arbitration] Association into their contract, they 'clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause [applies].'" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co.*, 432 F.3d at 1332). Here, the Arbitration Provision explicitly incorporates the procedural rules of JAMS and the AAA. Moreover, these rules clearly require that the arbitrator resolve threshold jurisdictional questions concerning scope.[22] The incorporation of the JAMS and

---

[21] Notably, the Eleventh Circuit has found "that comparable language expressed a clear and unmistakable intent to delegate questions of arbitrability in general." *JPay, Inc.*, 904 F.3d at 939 (citing *Jones*, 866 F.3d at 1267 (interpreting a contract stating that "the Arbitrator . . . shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245-46 (11th Cir. 2014) (interpreting a delegation of "any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination")).

[22] Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures states that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

AAA rules and the Arbitration Provision's application of those rules to disputes brought under the Agreement "clearly and unmistakably" indicates that the parties "contracted to submit questions of arbitrability to an arbitrator." *U.S. Nutraceuticals, LLC*, 769 F.3d at 1311 (citing *Terminix Int'l Co.*, 432 F.3d at 1332). As such, "the court should compel arbitration without assessing the arbitration agreement's validity or scope." *Steffanie A.*, 2020 WL 588284, at *2 (citing *Terminix Int'l Co.*, 432 F.3d at 1332-33).

The Arbitration Provision explicitly states that the JAMS and AAA rules are to be applied to any disputes arising under the Agreement. Notably, despite arguing that there is no clear and unmistakable evidence of Plaintiff's agreement to arbitrate disputes with Defendants on gateway issues of arbitrability, Plaintiff fails to mention that the Arbitration Provision incorporates the JAMS and AAA rules. It is well established in this Circuit that incorporating these rules constitutes clear and unmistakable evidence of an intent to arbitrate questions of arbitrability. *See U.S. Nutraceuticals, LLC*, 769 F.3d at 1311; *Terminix Int'l Co.*, 432 F.3d at 1332. Therefore, the arbitrator must address any arguments concerning the enforceability, scope, or validity of the Loan Agreement or the Arbitration Provision. *See Spivey v. Teen Challenge of Fla., Inc.*, 122 So. 3d 986, 992 (Fla. 1st DCA 2013) ("Courts are required to indulge every reasonable presumption in favor of arbitration recognizing it as a favored means of dispute resolution." (quoting *Am. Int'l*

---

JAMS, Comprehensive Arbitration Rules & Procedures (effective June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11. Likewise, Rule 14(a)-(b) of the AAA Consumer Arbitration Rules states that:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

Am. Arbitration Ass'n, Consumar Arbitration Rules (effective Nov. 1, 2020), https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf.

*Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 338 (Fla. 2d DCA 2004))); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or allegations of waiver, delay, or a like defense to arbitrability.").

### 3. Stay or Dismissal

Finally, Defendants ask this Court to dismiss or stay Plaintiff's claims pending arbitration, which Plaintiff fails to address in her Response. "Pursuant to Section 3 of the FAA, a district court shall stay a pending suit 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration' under a valid arbitration agreement." *Klay v. All Defendants*, 389 F.3d 1191, 1203-04 (11th Cir. 2004) (quoting 9 U.S.C. § 3). "For arbitrable issues, the language of Section 3 indicates that the stay is mandatory." *Id.* at 1204 (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable . . . ." (emphasis added))); *see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) (noting that "when a dispute is arbitrable, entry of a § 3 stay is mandatory" (citation omitted)).

As discussed above, the Court finds that Plaintiff's claims in this case are subject to arbitration under the Agreement. Therefore, a stay is appropriate. Further, because Plaintiff's claims are subject to the Arbitration Provision, any remaining disputes regarding the validity, enforceability, or scope of the Agreement or the Arbitration Provision must be resolved by the arbitrator. Thus, Defendants' Motion is granted, and Plaintiff's claims are stayed pending the completion of arbitration.

Case No. 20-cv-62441-BLOOM/Valle

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Compel Arbitration as to all Claims Asserted by Plaintiff Maria Poza and to Dismiss or Stay Claims of Maria Poza Pending Arbitration, **ECF No. [24]**, is **GRANTED**.

2. Plaintiff Maria Poza's claims against Defendants are **STAYED** pending arbitration. The parties may file a motion to lift the stay, if necessary, once the arbitration proceedings have concluded.

3. Defendant's' Motion to Dismiss Plaintiffs' Claims, **ECF No. [23]**, is **DENIED AS MOOT**.

4. Plaintiff's Motion to Exclude from Consideration Exhibits to Defendants' Reply in Support of Motion to Compel Arbitration, **ECF No. [45]**, is **DENIED**.

5. The Clerk of Court shall **ADMINISTRATIVELY CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 14, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

36