**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-62441-BLOOM/Valle**

ALEXISS WRIGHT, MARIA C. POZA,
JERRICK BUCK, and YVONNE BUCK,
*individuals, on behalf of themselves and
others similarly situated*,

    Plaintiffs,

v.

GREENSKY, INC.; GREENSKY, LLC;
GREENSKY HOLDINGS, LLC; and
GREENSKY MANAGEMENT
COMPANY, LLC,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants GreenSky, Inc., GreenSky, LLC, GreenSky Holdings, LLC, and GreenSky Management Company, LLC's (collectively, "Defendants") Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Motion to Dismiss Claims of Plaintiffs Jerrick Buck and Yvonne Buck Based on the Statute of Limitations, ECF No. [23] ("Motion"). Plaintiffs Alexiss Wright, Jerrick Buck, Yvonne Buck, and Maria C. Poza (collectively, "Plaintiffs") filed a Response in Opposition, ECF No. [40] ("Response"), to which Defendants filed a Reply, ECF No. [42] ("Reply"). The Court has carefully reviewed the Motion, all related submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part consistent with this Order.

## I. BACKGROUND

On July 17, 2020, Plaintiff Alexiss Wright ("Wright") initiated this class action against Defendants in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* ECF No. [1-2] at 5-37. On December 1, 2020, Defendants removed the above-styled case to this Court, alleging jurisdiction under the Class Action Fairness Act ("CAFA") of 28 U.S.C. § 1332(d). ECF No. [1] ("Notice"). On December 16, 2020, Wright filed a First Amended Class Action Complaint, ECF No. [12] ("Complaint"), which added Plaintiffs Jerrick and Yvonne Buck (collectively, the "Bucks") and Maria C. Poza ("Poza") as named Plaintiffs. The Complaint asserts the following three counts against Defendants: Count I – Violations of Florida's Loan Broker Law ("FLBL") (Fla. Stat. § 687.14, *et seq.*); Count II – Violations of Florida's Credit Service Organizations Act ("CSOA") (Fla. Stat. § 817.7001, *et seq.*); and Count III – Injunctive Relief. *See generally id.*

According to the Complaint, Defendants are financial technology companies that allow various types of merchants to apply for point-of-sale loans on behalf of their customers through Defendants' mobile application that streamlines the entire lending process. *See* ECF No. [12] ¶¶ 25, 30. Defendants fund these loans through partnerships with lending institutions that serve as the lenders. *See id.* ¶ 27. Defendants orchestrate the loan origination process from the initial loan application through funding, and after brokering the loan, Defendants act as the loan servicer. *See id.* ¶ 87.

In or about July 2016, the Bucks purchased a solar system financed by a $25,000.00 Greensky loan. *Id.* ¶¶ 118, 119, 123. Unbeknownst to the Bucks, Greensky took a merchant fee of approximately 13% of the principal. *Id.* ¶¶ 124, 126. The Bucks repaid the loan entirely within the first year and unknowingly paid some or all of the undisclosed merchant fee. *Id.* ¶¶ 127, 128. In

June 2016, Wright purchased an air-conditioning system financed by a $9,522.00 Greensky loan. *Id.* ¶ 101. Unbeknownst to Wright, Greensky took a merchant fee of approximately 16% of the principal. *Id.* ¶ 100. Wright repaid the loan in late 2018 and unknowingly paid some or all of the undisclosed merchant fee. *Id.* ¶¶ 104, 105. The claims asserted in the Complaint are premised on the allegation that Defendants concealed the nature and amount of the merchant fees charged to consumers and failed to comply with loan broker disclosure requirements in violation of the FLBL. *Id.* ¶¶ 148-50. Plaintiffs also claim that Defendants acted as a credit service organization ("CSO") without a surety bond, accepted valuable consideration for referring customers to lenders who were offering substantially the same loan terms to the general public, and made false or misleading statements in violation of the CSOA. *Id.* ¶¶ 161-65, 167-68.

On January 20, 2021, Defendants filed the Motion, arguing that the Bucks' claims are barred by the statute of limitations and that the Bucks and Wright do not have standing to make a claim for injunctive relief. ECF No. [23]. On February 26, 2021, Plaintiffs filed their Response, ECF No. [40], and attached the Declaration of Jerrick Buck, ECF No. [40-1] ("Jerrick Declaration"), the Declaration of Alexiss Wright, ECF No. [40-2] ("Wright Declaration"), and the Declaration of Yvonne Buck, ECF No. [40-3] ("Yvonne Declaration") (collectively, "Declarations"). On March 19, 2021, Defendants submitted their Reply. ECF No. [43]. Before deciding on the Motion, on June 14, 2021, the Court stayed Poza's claims pending arbitration, denied the Motion as moot, and administratively closed the case. ECF No. [48]. On August 10, 2021, the Bucks and Wright filed an unopposed motion to reopen the case in order to resolve the Motion and proceed on the merits depending on the resolution of the Motion. ECF No. [49]. The Court reopened the case on August 16, 2021. ECF No. [50]. Central to the parties' dispute is whether the statute of limitations bars the Bucks' claims and whether the Bucks and Wright have

standing to assert a claim for injunctive relief.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, the district court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most

favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**B. Motion to Dismiss Claims Based on the Statute of Limitations**

Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in an answer rather than in a motion to dismiss. *See Owens-Benniefield v. BSI Fin. Servs.*, 806 F. App'x 853, 856 (11th Cir. 2020) ("Because a statute of limitations bar is an affirmative defense, a plaintiff is not required to negate the affirmative defense in her complaint.") (citing *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). However, if the complaint on its face shows that the statute of limitations bars the claims, the statute of limitations defense can be raised in a motion to dismiss. *Quire v. Smith*, No. 21-10473, 2021 WL 3238806,

at *1 (11th Cir. July 30, 2021) (citing *La Grasta*, 358 F.3d at 845); *see also Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 (11th Cir. 2005).

### C. Motion to Dismiss Claims for Lack of Standing

Generally, standing is a threshold jurisdictional question under Article III of the Constitution, which requires three elements: (1) an "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)); *see also Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006) ("Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'"); *Dermer v. Miami–Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility [*sic*]."). When a plaintiff seeks injunctive relief, the plaintiff must also show "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future" in order to demonstrate "injury-in-fact." *Houston*, 733 F.3d at 1328-29 (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). This future injury must be "real and immediate," not "merely conjectural or hypothetical." *Id.* at 1329 (quoting *Shotz*, 256 F.3d at 1081) (further citations omitted). In sum, to seek injunctive relief, the plaintiff must show that: (1) he or she is under threat of suffering injury-in-fact that is concrete and particularized; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged action of the defendant; and (4) it must be likely that a favorable judicial decision will prevent or redress the injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

## III. DISCUSSION

Defendants first seek to dismiss the Bucks' claims under the FLBL and CSOA, arguing that the statute of limitations bars the Bucks' claims. ECF No. [23] at 5. Defendants also move to dismiss the Bucks and Wright's claim for injunctive relief contending that the Bucks and Wright lack standing to make a claim for injunctive relief. *Id.* at 12. Plaintiffs respond that the Bucks' claims are timely as pled and that the Bucks and Wright do have standing to make a claim for injunctive relief. ECF No. [40] at 5, 10. The Court considers each argument in turn.

### A. Motion to Dismiss the Bucks' Claims Based on the Statute of Limitations

As a preliminary matter, the Court must address whether the Court may consider, in a motion to dismiss, Defendants' affirmative defense that the statute of limitations bars the Bucks' claim. As a general rule, an affirmative defense must be raised in an answer, not in a motion to dismiss. *See Owens-Bennifield*, 806 F. App'x at 856 (citing *La Grasta*, 358 F.3d at 845). However, a statute of limitations defense may be raised in a motion to dismiss if it is apparent from the complaint that the claim is time-barred. *See Quire*, 2021 WL 3238806, at *1 (citing *La Grasta*, 358 F.3d at 845); *see also Tello*, 410 F.3d at 1288.

#### 1. Consideration of the Loan Agreement

Because the Complaint does not state the precise date the Bucks financed their home renovation through Defendants' services and when Defendants charged the hidden merchant fee, ECF No. [12] ¶ 118, the pertinent issue in this case is whether the loan agreement ("Loan Agreement") between the Bucks and The Brand Banking Company ("Lender") can be considered along with the Complaint in determining when the statute of limitations began to accrue. ECF No. [23-1].[1] The United States Court of Appeals for the Eleventh Circuit has established that, when

---

[1] Unlike Plaintiff Maria Poza's loan agreement, the Bucks' Loan Agreement does not contain an arbitration provision. *Compare* ECF No. [23-1] *with* ECF No. [24-1] at 11.

considering facts outside the complaint in a motion to dismiss, the court may only examine documents that are: (1) referred to in the complaint; (2) of undisputed authenticity; and (3) central to the plaintiff's claim. *See Roberts v. Carnival Corporation*, 824 F. App'x 825, 826 (11th Cir. 2020); *Wilchombe*, 555 F.3d at 959 ("A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."); *Maxcess, Inc*, 433 F.3d at 1340 ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley*, 304 F.3d at 1135).

Plaintiffs concede that the Complaint refers to the Loan Agreement. ECF No. [40] at 8; *see also* ECF No. [12] ¶¶ 38, 120. Plaintiffs also do not dispute the authenticity of the Loan Agreement. *See* ECF No. [40] at 7-10.[2] Moreover, the Loan Agreement is central to the Bucks' claim. The claims asserted in the Complaint are premised on the contention that Defendants allegedly concealed the nature and amount of the merchant fees charged to consumers in their loan agreements, and that they failed to comply with the disclosure requirements of credit services organizations in their loan agreements. ECF No. [12] ¶¶ 38-43. If the Loan Agreement contained the nature and amount of the merchant fees charged or made the necessary disclosures, the Loan Agreement would defeat much of the Bucks' FLBL and CSOA claims. As such, the Loan Agreement is a central part of the Bucks' claims. The Court finds *Rousseau v. Green Tree Servicing, LLC*, No. 14–62568–CIV–BLOOM/VALLE, 2015 WL 11197797, at *3 n.1 (S.D. Fla.

---

[2] It should be noted that the Bucks did not physically sign the Loan Agreement, ECF No. [23-1], and Defendants failed to provide any other contract, such as a borrower payment certificate, that acknowledges that the Bucks received the Loan Agreement and agreed to be legally bound by it. However, Plaintiffs mention that the Loan Agreement is not signed only to contend that the agreement date is not the date on which the statute of limitations began to accrue. *See* ECF No. [40] at 10. Plaintiffs do not challenge the authenticity of the Loan Agreement or contend that the Bucks are not bound by the terms of the Loan Agreement. *See id*. As such, the authenticity of the Loan Agreement is not disputed.

May 7, 2015), to be instructive on this matter. In *Rousseau*, this Court found that, in a lawsuit against loan servicers, a loan agreement that was referenced in the complaint could be considered in a motion to dismiss because the loan agreement was central to the claims raised in the complaint. *See id*. Similarly, in this case, the Court finds that the Loan Agreement is central to the Bucks' claims and may be considered in a motion to dismiss.

Plaintiffs argue that the Loan Agreement is not central to the claims because the Bucks' claims do not seek to hold Defendants liable for contractual duties imposed by the Loan Agreement and the Bucks' claims arise from other undisclosed agreements that Defendants had with merchants and banks. ECF No. [40] at 8. Plaintiffs rely on *Roberts*, 824 F. App'x at 826, to argue that the Loan Agreement is not a central part of Plaintiffs' efforts to show the Bucks' losses. ECF No. [40] at 8. However, the fact that the Bucks' claims depend on other agreements Defendants had with merchants and banks and the fact that the Bucks' claims do not raise contractual liabilities pursuant to the Loan Agreement do not mean that the Loan Agreement cannot also be central to the Bucks' claims. As stated above, the contents of the Loan Agreement are central to the Bucks' claims because the Loan Agreement allegedly did not contain information about the merchant fees or make the necessary disclosures and thereby allowed Defendants to conceal the nature and amount of the merchant fees. ECF No. [12] ¶¶ 59, 124-127. Determining the veracity of the Bucks' claims will necessarily depend on examining the Loan Agreement. Furthermore, *Roberts* is not instructive to this case because the court in *Roberts* found that but-for causation was insufficient to make an agreement central to the plaintiff's claims. *See* 824 F. App'x at 827. In this case, the Loan Agreement is not merely a but-for cause of the Bucks' claims but an essential part of demonstrating if and how Defendants failed to make the necessary disclosures. ECF No. [12] ¶ 59. As such, the Loan Agreement is properly part of the Court's consideration in a motion to dismiss.

9

2. **Statute of Limitations**

The next issue is whether the Loan Agreement makes apparent that the Bucks' claims are time-barred. A statute of limitations defense may be raised in a motion to dismiss only if it is apparent that the claim is time-barred. *See Quire*, 2021 WL 3238806, at *1. In this case, the applicable statute of limitations period is four years. *See* Fla. Stat. Ann. § 95.11(3)(f). The Loan Agreement states that the agreement date is July 14, 2016. ECF No. [23-1] at 2. The original complaint was filed on July 17, 2020. ECF No. [1-2] at 5-37. As such, Defendants argue that it is apparent from the incorporated Loan Agreement that the statute of limitations bars the Bucks' claims. ECF No. [23] at 5-6. However, Plaintiffs argue that the agreement date in the Loan Agreement is not when the statute of limitations on the Bucks' claims began to accrue. ECF No. [40] at 9-10. Plaintiffs also raise, in their Complaint, several allegations directed toward tolling the statute of limitations. ECF No. [12] ¶¶ 129-132.

The Court first addresses Plaintiffs' argument that the agreement date in the Loan Agreement is not the date on which the statute of limitations on the Bucks' claims began to accrue. As an initial matter, the Court notes that the Bucks did not sign and date the Loan Agreement. ECF No. [23-1]. The Loan Agreement states that if the Loan Agreement is not physically signed and dated, an electronic signature governs. *Id.* at 2. The electronic record of the "first use of the shopping pass, purchasing card, or the associated installment loan to make a purchase will constitute acceptance by (all) borrower(s) of the terms of the accompanying installment loan agreement." *Id.* The Complaint and the incorporated Loan Agreement, however, do not indicate the date in which the Bucks first used the shopping pass, purchasing card, or the associated installment loan. Therefore, by all indications, the agreement date on the Loan Agreement is the date on which the Lender signed the agreement, not necessarily when the Bucks agreed to the

terms of the Loan Agreement. Accordingly, it is not apparent from the Complaint or the incorporated Loan Agreement that the Bucks' claims are time-barred.

Even if the agreement date was the date the Bucks signed the Loan Agreement, Plaintiffs argue that the Loan Agreement does not show when the statute of limitations for the Bucks' claims began to accrue because the statute of limitations began to accrue when the Bucks' loan was funded with a hidden merchant fee and Defendants collected the hidden merchant fee. ECF No. [40] at 9. Under Florida law, "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). The Eleventh Circuit has determined in *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015), that a cause of action begins when the plaintiff suffers its first injury, irrespective of whether some or all of the damages occurred at that time.

In this case, it is not apparent from the Loan Agreement if the Bucks had a cause of action when they agreed to the Loan Agreement because the Loan Agreement contains no mention of a hidden merchant fee in violation of the FLBL. ECF No. [23-1]. Furthermore, the text of the Loan Agreement does not give any indication of misleading statements in violation of the CSOA. *Id.* In other words, it is not apparent from the Loan Agreement that Defendants engaged in any wrongdoing or that the Bucks suffered an injury and incurred any damages on the agreement date. It is only when the Loan Agreement is combined with the funding of the loan with a hidden merchant fee and the collection of the merchant fee that a cause of action begins to exist. Until the hidden merchant fee is funded and collected, the Loan Agreement by itself does not provide sufficient grounds for a cause of action. As such, without further information on when the hidden merchant fee was charged and collected, the Complaint and the incorporated Loan Agreement do not make apparent that the Bucks had a cause of action for the statute of limitations to begin to

accrue on the agreement date. Because the Complaint and the Loan Agreement do not make apparent that the statute of limitations bars the Bucks' claims, an affirmative answer raising the statute of limitations is not appropriate in a motion to dismiss. *See Quire*, 2021 WL 3238806, at *1.

Defendants' arguments to the contrary are unavailing. First, Defendants argue that the Loan Agreement gave the Bucks inquiry notice of "Greensky's involvement." ECF No. [42] at 4. However, inquiry notice of Defendants' involvement is not the last element of Bucks' cause of action. As noted above, for the statute of limitations to begin to accrue, the Bucks must have a cause of action against Defendants, and inquiry notice of Defendants' involvement alone, without any indication of wrongdoing, does not give rise to a cause of action against Defendants. It is only when the hidden merchant fees were charged and collected from the Bucks that the Bucks had a claim against Defendants. Therefore, inquiry notice of Defendants' involvement is not a dispositive factor.

Defendants rely on *Kipnis*, 784 F.3d at 779, in their Reply to set forth the legal standard that the statute of limitations attaches upon the plaintiff's "first injury." ECF No. [42] at 4. While technically correct, the standard does not advance Defendants' theory that the statute of limitations began to accrue on the agreement date. As noted above, the Loan Agreement does not indicate that the Bucks suffered an injury on the agreement date because it does not mention a hidden merchant fee. It is unclear from the Loan Agreement when the hidden merchant was charged and collected, which is a necessary element for the "first injury" to occur.

Defendants also cite *XP Global, Inc. v. AVM, L.P.*, No. 16-cv-80905, 2018 WL 10150927, *18 (S.D. Fla. Jan. 11, 2018) to set forth the Delayed Discovery Rule in fraud claims. According to the Delayed Discovery Rule, the statute of limitations begins to accrue when the plaintiff either knows or should have known that the last element of the cause of action had occurred. *See id.* The

12

Delayed Discovery Rule, however, is inapplicable because Plaintiffs' contention is that the statute of limitations began to run on a later date, not because the Bucks knew or should have known about the cause of action at a later date, but because the cause of action against the Bucks did not *exist* until a later date when the loan was funded with a hidden merchant fee. The issue here is when the claim existed, not when the Bucks knew or should have known about the existence of the claim. Therefore, *XP Global, Inc.* and the Delayed Discovery Rule are inapposite to this issue.[3]

In summary, although the Loan Agreement can be considered in addressing the Motion to Dismiss, it is not apparent that the cause of action began to accrue on the agreement date in the Loan Agreement because the Loan Agreement does not make clear that the Bucks had a cause of action on the agreement date. Therefore, it is not apparent from the Complaint and the incorporated Loan Agreement that the Bucks' claims are time-barred and Defendants' Motion to Dismiss the Bucks' claims based on the statute of limitations must be denied. The Court foregoes consideration of Plaintiffs' other arguments to toll the statute of limitations.

### B. Motion to Dismiss the Bucks and Wright's Claim for Injunctive Relief

The Court now considers Defendants' Motion to Dismiss the Bucks and Wright's claim for injunctive relief. To seek injunctive relief, plaintiffs must demonstrate that they have standing by showing that: (1) they are under threat of suffering an injury-in-fact that is concrete and particularized; (2) the threat is actual and imminent, not conjectural or hypothetical; (3) the injury

---

[3] Furthermore, because the Bucks' claims are based on statutory liability, not a claim founded upon fraud, the Delayed Discovery Rule does not apply. *See Marlborough Holdings Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Coll. No. Two, Inc.*, 505 F. App'x. 899, 906 (11th Cir. 2013) (refusing to apply the Delayed Discovery Rule to a claim based on violations of the Florida Deceptive and Unfair Trade Practices Act because it was a claim based on statutory liability); *Hollis v. Western Hollis v. Western Academy Charter, Inc.*, 782 F. App'x. 951, 953 (11th Cir. 2019) (stating that the Delayed Discovery Rule is limited, by statute, to causes of action involving fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, and has been extended by the Florida Supreme Court only in the narrow context of childhood sexual abuse cases) (citing *Davis v. Monahan*, 832 So. 2d 708, 710, 712 (Fla. 2002)).

is fairly traceable to the challenged action of the defendant; and (4) it is likely that a favorable judicial decision will prevent or redress the injury. *See Summers*, 555 U.S. at 493.

The Complaint alleges that the Bucks and Wright paid off their loans. ECF No. [12] ¶¶ 105, 128. The Complaint does not allege that the Bucks and Wright signed new loans with Defendants since paying off their respective loans. *Id.* ¶¶ 95-105, 117-28. Therefore, the Complaint does not appear to allege that the Bucks and Wright are under any threat of suffering an injury-in-fact, much less a threat that is "actual and imminent."

Plaintiffs rely on *Wasser v. All Mkt., Inc.*, No. 16-cv-21238, 2017 WL 11139701, at *6 (S.D. Fla. Nov. 13, 2017) and *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *14 (N.D. Ill. Feb. 26, 2019), and argue that if the alleged misconduct is ongoing, then a plaintiff can make a showing of a threat that is actual and imminent by claiming that the plaintiff would use the defendant's products or services if the alleged misconduct was rectified. ECF No. [40] at 11. The Court is not persuaded for the following reasons.

First, although the Complaint alleges that Defendants are still engaged in wrongdoing, ECF No. [12] ¶¶ 94, 183, the Complaint does not allege that the Bucks and Wright would use Defendants' products and services if the wrongdoing was rectified. *See generally* ECF No. [12]. Plaintiffs filed Declarations from the Bucks and Wright in their Response stating that the Bucks and Wright would consider Defendants' services in the future if the wrongdoing was rectified. ECF Nos. [40-1], [40-2], [40-3]. However, the Eleventh Circuit has determined that plaintiffs cannot amend a complaint through arguments made in opposition to a motion to dismiss. *Jallali v. Nova Se. Univ., Inc.,* 486 F. App'x 765, 767 (11th Cir. 2012) (citing *Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007)); *see also Burkes v. Dylewski*, No. 1:14-CV-22079-UU, 2016 WL 9526692, at *4 n.1 (S.D. Fla. May 3, 2016) (refusing to consider, in a motion

to dismiss, declarations attached to the plaintiffs' response to the defendants' motion to dismiss); *see also Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) ("It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss."). As such, Plaintiffs' argument is unpersuasive for failing to allege within the four corners of the Complaint that the Bucks and Wright would use Defendants' services if the wrongdoing was rectified.

Furthermore, even if the Court considered the Declarations, the Declarations do not allege that the Bucks and Wright are under an "actual and imminent" threat of an injury-in-fact. *See Summers*, 555 U.S. at 493. The Declarations only claim that the Bucks and Wright "would consider" Defendants' loan services. ECF Nos. [40-1] ¶ 19, [40-2] ¶ 17, [40-3] ¶ 17. Such conjectural statements do not constitute a sufficient allegation that the threat of injury is "actual and imminent." In *Wasser* and *Smith-Brown*, the two cases that Plaintiffs cite, the plaintiffs stated that they "will" purchase the defendant's product or that they "want" to purchase defendant's product, not that they "would consider" purchasing the defendant's product if the misconduct was rectified. *See Wasser*, 2017 WL 11139701, at *6; *Smith-Brown*, 2019 WL 932022, at *14. Here, Plaintiffs note that the Bucks and Wright "would be open-minded to a Greensky loan" if the Court were to grant injunctive relief. ECF No. [40] at 13. As such, the cited cases are distinguishable from the present case because the plaintiffs in the cited cases had a clear intention to purchase the rectified product, which in turn constituted a threat that was "actual and imminent," but the Bucks and Wright only made a conjecture that they would keep an open mind about a future loan serviced by Defendants.

In addition, the Court must address whether it is likely that a favorable judicial decision will prevent or redress the supposed injury. *See Summers*, 555 U.S. at 493. The Court must find

that it is likely that granting the injunctive relief would result in the Bucks and Wright obtaining another loan from Defendants. The Court does not consider such an outcome to be likely given the allegations in the Complaint. Despite Plaintiffs' contention that an injunction barring Defendants from charging unlawful fees and requiring full disclosures of the fees collected would allow the Bucks and Wright to consider Defendants' services, ECF No. [40] at 13, Plaintiffs' Complaint noticeably states that Defendants offer loans that have substantially the same terms or markedly worse terms than the loans offered by Defendants' partner banks to the general public. ECF No. [12] ¶ 165. The allegations support the finding that the requested injunctive relief would not result in the Bucks and Wright knowingly choosing to use Defendants' loans that have substantially similar or markedly worse terms than loans available to the general public. *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1228 (S.D. Fla. 2018) (citing *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *14 (S.D. Ohio Oct. 4, 2016) (holding that the plaintiffs lacked standing for injunctive relief because the court found that the plaintiffs were aware of their injuries and attributed those injuries to defendant's products and that it was not plausible that plaintiffs would knowingly purchase the defendant's product again)). Accordingly, the Bucks and Wright lack standing to pursue injunctive relief and dismissal of their claim for injunctive relief is appropriate.

Furthermore, given the allegations in the Complaint, it is apparent that Plaintiffs will be unable to include allegations in an amended complaint that would establish standing for injunctive relief. Plaintiffs have already amended their Complaint and do not seek leave to further amend. *See* ECF No. [40]. As such, the Court determines that another opportunity to plead the necessary allegations for standing would be futile and a second amended complaint would not survive a motion to dismiss. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)

16

(denying the plaintiff an opportunity to file another amended complaint when the previous amended complaint did not contain meritorious claims). Therefore, the Court dismisses the claim for injunctive relief with prejudice.

Lastly, because the Bucks and Wright do not have standing to pursue injunctive relief, they cannot represent a class seeking injunctive relief under Rule 23(b)(2), and their class allegations on this claim must be dismissed as well. *See Church v. City of Huntsville,* 30 F.3d 1332, 1340 (11th Cir. 1994) ("Individual standing requirements must be met by anyone attempting to represent his own interest or those of a class. If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class.") (quoting *Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir. 1984)). As such, the Bucks and Wright cannot seek injunctive relief on behalf of the proposed class.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Motion to Dismiss Claims of Plaintiffs Jerry Buck and Yvonne Buck Based on the Statute of Limitations, **ECF No. [23]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiffs Jerry Buck and Yvonne Buck's first two claims (Count I and Count II) shall proceed against all Defendants.

3. Plaintiff Alexiss Wright's first two claims (Count I and Count II) shall proceed against all Defendants.

4. Plaintiffs Jerry Buck, Yvonne Buck, and Alexiss Wright's claim for injunctive relief (Count III) is **DISMISSED WITH PREJUDICE**.

5. Defendants shall file an Answer to Count I and Count II by no later than **November**

**9, 2021**.

6. Plaintiff Maria Poza's claims remain **STAYED** pending arbitration. Plaintiff Maria Poza and Defendants may file a motion to lift the stay, if necessary, once the arbitration proceedings have concluded.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 26, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record