UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-62441-BLOOM/Valle**

ALEXISS WRIGHT,
*an individual, on behalf of herself and others*
*similarly situated,*

       Plaintiff,

v.

GREENSKY MANAGEMENT COMPANY, LLC,
GREENSKY, INC., GREENSKY HOLDINGS, LLC,
and GREENSKY, LLC,

       Defendants.

_____/

## <u>ORDER ON MOTION FOR CLASS CERTIFICATION</u>

    **THIS CAUSE** is before the Court upon Plaintiff Jerrick Buck's (Plaintiff) Motion for Class Certification, ECF No. [142] ("Motion for Class Certification")[1]. Defendants, GREENSKY MANAGEMENT COMPANY, LLC, GREENSKY, INC., GREENSKY HOLDINGS, LLC, and GREENSKY, LLC, ("Defendants") filed a Response in Opposition, ECF No. [154] ("Response")[2], to which Plaintiff filed a Reply, ECF No. [161] ("Reply")[3]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion for Class Certification is denied.

## I.    BACKGROUND

---

[1] An unredacted version of the Motion for Class Certification was filed at ECF No. [143]. The same pagination appears in both the redacted and unredacted version. The Court cites to the redacted version throughout this Order.

[2] An unredacted version of the Response was filed at ECF No. [155-1]. The same pagination appears in both the redacted and unredacted version. The Court cites to the redacted version throughout this Order.

[3] An unredacted version of the Reply was filed at ECF No. [162-1]. The same pagination appears in both the redacted and unredacted version. The Court cites to the redacted version throughout this Order.

On July 17, 2020, Alexiss Wright initiated this class action against Defendants in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* ECF No. [1-2] at 5-37. Defendants removed the case to this Court, alleging jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). ECF No. [1] ("Notice"). Thereafter, on December 16, 2020, Wright filed a First Amended Class Action Complaint, ECF No. [12] ("Complaint"), adding Jerrick Buck, Yvonne Buck, and Maria C. Poza ("Poza") as named Plaintiffs. Upon joint stipulations filed with the Court, Plaintiffs Maria C. Poza's and Alexis Wright's claims against Defendants were dismissed with prejudice, ECF No. [135], and the claims brought by Jerrick Buck and Yvonne Buck[4] proceeded against Defendants. *Id*. The Complaint asserts the following three counts against Defendants: Count I – Violations of Florida's Loan Broker Law ("FLBL") (Fla. Stat. § 687.14, *et seq.*); Count II – Violations of Florida's Credit Service Organizations Act ("CSOA") (Fla. Stat. § 817.7001, *et seq.*); and Count III – Injunctive Relief. *See generally* ECF No. [12]. On October 27, 2021, Defendants' Motion to Dismiss was granted and the Court dismissed Plaintiff's claim for injunctive relief with prejudice. *See* ECF No. [56].

According to the Complaint, Defendants are financial technology companies that allow various types of merchants to apply for point-of-sale loans on behalf of their customers through Defendants' mobile application that streamlines the entire lending process. *See* ECF No. [12] ¶¶ 25, 30. Defendants fund these loans through partnerships with lending institutions that serve as the lenders. *See id.* ¶ 27. Defendants orchestrate the loan origination process from the initial loan application through funding; after brokering the loan, Defendants act as the loan servicer. *See id.*

---

[4] On November 21, 2022, the parties entered a joint stipulation requesting Yvonne Buck be dismissed from the case with prejudice. ECF No. [185]. The Court approved, and Yvonne Buck's claims were dismissed with prejudice.

¶¶ 35, 87.

In July 2016, Plaintiff purchased a solar system financed by a $25,000.00 Greensky loan. *Id.* ¶¶ 118, 119, 123. Unbeknownst to Plaintiff, Greensky took a transaction fee[5] of approximately 13% of the principal. *Id.* ¶¶ 124, 126. Plaintiff repaid the loan entirely within the first year and unknowingly paid some or all of the undisclosed transaction fee. *Id.* ¶¶ 127, 128.

The claims asserted in the Complaint are premised on the allegation that Defendants concealed the nature and amount of the transaction fees charged to consumers and failed to comply with loan broker disclosure requirements, in violation of the FLBL. *Id.* ¶¶ 148-50. The Complaint alleges that Defendants acted as a credit service organization ("CSO") without a surety bond, accepted valuable consideration for referring customers to lenders who were offering substantially the same loan terms to the public, and made false or misleading statements in violation of the CSOA. *Id.* ¶¶ 161-65, 167-68.

On September 19, 2022, Plaintiff Jerrick Buck filed the instant Motion seeking class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). ECF No. [142]. Plaintiff proposes the following class:

> **CLASS:** "All persons in Florida who, between July 17, 2016, and the present, secured a GreenSky Consumer Program loan with a principal amount of at least $1,000, on which GreenSky collected a transaction fee."[6]

*Id.* at 6

---

[5] The Parties interchangeably use the terms "merchant fee" and "transaction fee" to refer to the fees charged by Defendants to merchants. For consistency, the Court uses the term "transaction fee" unless directly quoting from a party's filing.

[6] Specifically excluded from the class are: "(1) GreenSky and its subsidiaries and affiliates; (2) the judge(s) to whom this case is assigned and any immediate family members thereof; (3) anyone who has previously settled these claims with GreenSky; and (4) anyone who has initiated arbitration proceedings or had arbitration proceedings initiated by GreenSky per the terms of their GreenSky loan agreement." ECF No. [142] at 6, n.1.

Defendants respond that Plaintiff's proposed class does not meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) because (1) Plaintiff does not satisfy the commonality requirement; (2) Plaintiff does not satisfy the typicality requirement; (3) Plaintiff does not satisfy Rule 23(a)(4)'s adequacy of representation standard; (4) individual issues predominate; and (5) Plaintiff has not met his burden of showing superiority of the class device. *See generally* ECF No. [154]. Plaintiff replies that Defendants fail to rebut the showing of commonality and predominance, Defendants' reliance on unidentified arbitration clauses is unavailing, and Plaintiff's claims are typical of the Class and requests that the Court reject attacks on Plaintiff's adequacy. *See generally* ECF No. [161].

## II.   LEGAL STANDARD

### A.  Class Certification

District courts have broad discretion in deciding whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class action, the putative class must satisfy "the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)); *see also Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b).")(quoting *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997)).

"Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.,* 564 F.3d

1256, 1265 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187-88 (11th Cir. 2003)) (internal quotation marks omitted). Next, under Rule 23(b)(3), class certification is appropriate if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

 "The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein*, 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis in original). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

## III.   DISCUSSION

As noted above, Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). ECF No. [142]. Defendants respond that Plaintiff's proposed class does not meet the

requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) because (1) Plaintiff does not satisfy the commonality requirement; (2) Plaintiff does not satisfy the typicality requirement; (3) Plaintiff does not satisfy Rule 23(a)(4)'s adequacy of representation standard; (4) individual issues predominate; and (5) Plaintiff has not met his burden of showing superiority of the class device. *See generally* ECF No. [154]. Plaintiff replies that Defendants fail to rebut the showing of commonality and predominance, Defendants' reliance on unidentified arbitration clauses is unavailing, Plaintiff's claims are typical of the Class, and the Court should reject attacks on Plaintiff's adequacy. *See generally* ECF No. [161].

The Court addresses the requirements for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3).

### A.  Rule 23(a)

Under Rule 23(a), Plaintiffs are required to demonstrate each of the four factors for class certification: numerosity, commonality, typicality, and adequacy. *Vega*, 564 F.3d at 1265. Although Defendants do not dispute numerosity, the Court addresses each of the four factors.

#### i. Numerosity

Under the first prong of Rule 23(a), a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable." *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). "The focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Id.* at 678-79 (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Generally, less than twenty-one (21) class members is inadequate to satisfy the numerosity requirement, but more than forty (40) is adequate. *Id.* (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).

Plaintiff contends that the numerosity requirement is met since Defendants' loan data lists over 100,000 loans in the relevant period, indicating that there could be at least as many class members who meet the criteria laid out in the class definition. ECF No. [142] at 15. Defendants do not challenge the numerosity requirement, and the Court finds that the class is sufficiently numerous to make joinder of all proposed class members impractical.

### ii. Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.") (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). In *Wal–Mart Stores, Inc. v. Dukes*, the Supreme Court held that commonality requires that the claim of the putative class "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (citation and internal quotation marks omitted; emphasis in original).

Plaintiff argues that the proposed class shares the same controlling questions of law and fact. See ECF No. [142] at 15-16. Plaintiff contends that because the proposed class is comprised of members who entered into substantially identical loan agreements, subject to the same improper undisclosed fees due to Defendants' uniform course of conduct, the class members seek to resolve the common question of whether Defendants' uniform practice was unlawful. *Id*. Defendants respond that there is no commonality because (1) some loan agreements require arbitration and

others do not; (2) analogous cases demonstrate that proposing a question of whether an alleged practice or policy was illegal does not satisfy the requirement of commonality; and (3) Plaintiff's reliance on expert study is insufficient to establish that class wide injury can be proven by common proof. *See* ECF No. [154] at 7-12. The Court addresses each of these challenges to the commonality prong.

### a. Arbitration Clauses

Plaintiff contends that all class members entered into substantially identical loan agreements, giving rise to the common question of the legality of failing to disclose transaction fees and incentive payments in those loan agreements. ECF No. [142] at 15. Defendants argue that there is no commonality because some loan agreements require arbitration and others do not. *Id.* at 8. In support, Defendants cite district court cases from Maryland, Kentucky, and California holding that where some contracts contain arbitration clauses and others do not, there is not sufficient commonality to certify all of the contract holders into one class. *See Spotswood v. Hertz Corp.*, 2019 WL 498822, *11 (D. Md. Feb. 7, 2019); *Johnson v. BLC Lexington, SNF*, 2020 WL 3578342, at *5, *6 (E.D. Ky. July 1, 2020); *Tan v. Grubhub, Inc.*, 15-CV-05128-JSC, 2016 WL 4721439, at *4 (N.D. Cal. July 19, 2016), *aff'd sub nom. Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021). Plaintiff replies that Defendants have not presented satisfactory evidence of arbitration provisions and, in any event, an arbitration provision in some class members' loan agreements would not defeat class certification. Plaintiff cites to multiple district court cases from this Circuit where the courts found it appropriate to create a subclass of contract holders whose contracts contain arbitration provisions rather than to deny certification outright. *Rosen v. J.M. Auto*, 270 F.R.D. 675, 683 (S.D. Fla. 2009) ("… that some of the class members claims may be affected by arbitration agreements does not make class certification inappropriate. We find that it

would be more appropriate to create a subclass rather than deny certification outright."); *Cardenas v. Toyota Motor*, 2021 WL 6926418, at *22 (S.D. Fla. Aug. 12, 2021) ("[E]ven if the arbitration is ultimately problematic for claims administration purposes, I concur that those with arbitration agreements could either be broken into a subclass or excluded."); *Gregory v. Preferred Fin.*, 2013 WL 6632322, at *8 (M.D. Ga. Dec. 17, 2013)(holding that the fact that some putative class members may be subject to the defense of a valid arbitration agreement does not preclude class certification); *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 288-289 (M.D. Fla. 2017) (holding that the argument that some class members claims may be affected by arbitration agreements does not make certification inappropriate, and reserving "the right to consider creating a subclass or decertifying a portion of the class at a later time if necessary.").

Consistent with the cases cited from district courts in this Circuit, the Court finds that the issue raised regarding the existence of arbitration clauses in some loan agreements is resolved by creating a subclass of loan agreement holders whose contracts contain arbitration provisions rather than denying certification. The Court therefore finds that it would be appropriate to create a subclass of borrowers, meeting the specified class criteria, whose loan agreements contain arbitration clauses.

### b. Common Question of Practice or Policy

Plaintiff contends that the legality of the uniform practices by Defendants, which affected all class members, poses a common question for all class members, thus satisfying Rule 23(a)(2). ECF No. [143] at 15. Defendants respond that case law demonstrates that a common question is insufficient where a Plaintiff purports to show commonality through a supposed policy. ECF No. [154] at 10. Defendants contend that regardless of the alleged policy it had with its merchants concerning transaction fees, the trier of fact must answer the specific question of how each

merchant actually treated such fees. *Id.* at 10-11. Plaintiff replies that the case law does not weigh against either commonality or predominance in this case because the case law cited by Defendants is distinguishable. ECF No. [161] at 5-6. Plaintiff also provides additional citations in his Reply to support his position that Defendants' consistent policy and training practices raise common questions of legality for all class members. *Id.* at 4.

As an initial matter, Plaintiff contends the parties agree that Defendants maintained a consistent training policy in which it trained contractors to pass on the cost of fees to homeowners. *Id.* at 4. However, the parties do not appear to agree on that point. In their Response, Defendants represent that they instruct merchants that "they are strictly prohibited from surcharging or otherwise 'passing through' to their customers any or all of their merchant fee they pay on a particular loan" and instead instruct the merchants "to treat the merchant fee as overhead. What they decide to do with their overhead expense is up to them." ECF No. [154] at 4-5. Defendants do contend that they consistently included these instructions in the contracts with merchants using their services. *Id.* Plaintiff relies on *Krukever v. TD Ameritrade*, 328 F.R.D. 649, 660 (S.D. Fla. 2018) for the proposition that an across-the-board policy is susceptible to common proof. In *Krukever*, the plaintiffs sought certification of a class to prosecute a claim that the defendant uniformly implemented and applied an unwritten policy to the accounts of each and every potential class member, in breach of the implied covenant of good faith and fair dealing. *Id.* at 655-56. Although the court denied class certification, it found that the defendant's across-the-board policy of liquidating all unsecured accounts was susceptible to common proof. *Id.* However, *Krukever* is distinguishable because here, Defendants' policy of charging a transaction fee directly affected the merchants, and it was left to the merchants to determine what, if any, portion of that fee would be

passed through to the borrower. *See* ECF No. [154] at 4. Here, unlike *Krukever*, Plaintiff has not provided evidence that each borrower was actually affected by Defendants' policy.

Plaintiff claims that class members will prove their claims through common evidence consisting of Defendants' internal emails and training materials that reflect Defendants coaching merchants to recoup the cost of transaction fees by charging higher project costs to homeowners, and statements from Defendants' executives that "contractors need to 'build … fees [in] to the cost of the job.'" *see* ECF No. [161] at 4-5. The Court is not convinced that the evidence alluded to is sufficient to demonstrate that each putative class member actually incurred a portion of the transaction fee charged to their merchant. Class members would each need to demonstrate that they incurred a portion of the transaction fee before the Court could consider the question of a statutory violation common to all class members.

Plaintiff attempts to switch the burden of demonstrating commonality by arguing that Defendants have not provided any evidence that some class members paid no fees. *See* ECF No. [161] at 8. Plaintiff cites *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017), where the Court found that "bare assertions" about potentially individualized issues of consent "cannot defeat certification under Rule 23." *Id*. In that case, the Court had determined that there was a common course of conduct that affected all potential class members. When that defendant challenged class certification by arguing that some members of the class provided prior consent, the Court pointed out that Defendant's bare assertion was without merit and would not bar class certification. *Id*. at 316. Here, the Court has not determined that Plaintiff has demonstrated that all class members were affected by a common policy and declines to look to Defendant to disprove what Plaintiff has not yet adequately proven.

Defendants first rely on *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684 (S.D. Fla. 2015) to support their proposition that the case law does not lend itself to a finding of commonality. There, this Court stated that, although the "commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members," plaintiff's "claim that [defendant] deviated or departed from internal policies to which it generally adhered" was not sufficient and individual evidence was required to show that the "internal policies and procedures were not followed in a particular instance." *Id*. at 697 (internal quotation marks and citations omitted). Plaintiff argues that *Alhassid* is distinguishable because the plaintiffs in that case did not challenge a class-wide policy, but departures from it, whereas here, Plaintiff challenges Defendants' policy and neither party has submitted any evidence of deviations from that policy. ECF No. [161] at 5-6. Although the Court agrees with Plaintiff that this case deals with adherence rather than deviation from a policy, the fact that the challenged policy applied directly to the merchants, not the borrowers, leads the Court to determine, as it did in *Alhassid*, that individualized evidence is necessary to determine which potential class members were affected by the policy.

Next, Defendants cite *Alvarez v. Loancare LLC*, 20-21837-CIV, 2021 WL 184547 (S.D. Fla. Jan. 19, 2021), where the Court found that a common question of whether the defendant's practice of charging a processing fee not authorized by contract or existing law was illegal was not sufficient to bind the class's members in part because the contention of illegality was unsupported by Florida law. *Id*. at *13. The Court noted that the "common contention *may* have glued together the classes' members." *Id*. (emphasis in original). Plaintiff successfully distinguishes *Alvarez* arguing that there, plaintiffs were missing a key component of a law prohibiting the conduct, where Plaintiff has articulated two Florida statues Defendants' policy violated. For the reasons already

addressed, there still remains the question of which putative class were actually affected by Defendants' violation of those statutes.

Defendants then cite *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 341 F.R.D. 636 (S.D. Fla. 2022), where the Court found that whether the defendant insurer had reimbursement liability to class members was a question common to all class members, but its answer would require individual rather than class-wide proof. *Id*. at 648. The Court found that the commonality requirement had not been met. *Id*. Plaintiff seeks to distinguish *MSP* arguing that here they seek to prove their claims with common proof about how the Defendants charged the fees. As discussed above, the Court agrees with Defendants that this case is not susceptible to proof by common evidence for all class members because Defendants' alleged policy still left the choice to the merchants about what portion of the transaction fee to pass on to the borrowers.

### c.  Common Proof

Plaintiff argues that he has "developed common proof regarding [Defendants'] practices when it comes to charging fees on its loans, characterizing those fees, and providing (or failing to provide) disclosures about those fees. ECF No. [142] at 19. Plaintiff indicates that he intends to rely on Defendants' standard loan agreement, and Defendants' documents, discovery responses, and deposition testimony evidencing Defendants' consistent efforts to keep transaction fees hidden from borrowers. *Id*. at 20-21. Plaintiff is not specific about how these sources will prove that all class members were affected by Defendants' common practices.

To demonstrate common proof of injury, Plaintiff retained Dr. Michael A. Williams[7], an expert in analyzing the impact of unfair and anti-competitive conduct. Dr. Williams conducted a

---

[7] The Court is aware that Defendants have submitted a *Daubert* Motion challenging the admissibility of Dr. Williams's expert report. *See* ECF No. [157]. At this juncture, however, the Court need not decide the *Daubert* issue since, even assuming the admissibility of Plaintiff's expert, class certification is due to be denied. *See Bouton v. Ocean Properties, Ltd*, 322 F.R.D. 683, 697, n.9 (S.D. Fla. 2017)

multivariate regression analysis which concludes that the common pass-through rate to class members is 37.0% with a 95% confidence interval ranging from 31.8% to 42.3%. *Id*. at 23-25; ECF No. [143-5] at 26. Dr. Williams opines that homeowners who finance projects through Defendants pay inflated project costs equal to 37% of the transaction fee associated with their loan. *See* ECF Nos. [142] at 11; [143-5].

Defendants respond that Plaintiff fails to submit any proof that Defendants' merchant *actually* passed through any part of its transaction fee to Plaintiff and no proof exists demonstrating the same for other merchants who worked with other potential class members. ECF No. [154] at 9-10 (emphasis in original). Defendants argue that it is "preposterous to opine that hundreds of merchants treated 197,000 individual merchant fees the same way" such that each class member would be entitled to 37% of their merchant's transaction fee, as suggested by Plaintiff's expert. *Id*. Defendants draw analogies between the instant matter and *Dukes*, where the Supreme Court held that regression analyses submitted by experts were insufficient to establish that plaintiffs' theory of liability could be proven on a class wide basis. 564 U.S. at 356-357.

In *Dukes*, the Supreme Court held that statistical evidence consisting primarily of regression analyses was insufficient to establish that a plaintiff's theory of employment discrimination on the basis of a discriminatory policy, noting that "information about disparities at the regional and national level does not establish the existence of disparities at individual stores…." *Id*. at 357.

Plaintiff replies that *Dukes* is not relevant here because Plaintiff is not using Dr. Williams to prove Defendants' liability, but only damages. ECF No. [161] at 5. Plaintiff contends further that Dr. Williams's testimony regarding damages satisfies the Supreme Court's ruling in *Comcast*

*Corp. v. Behrend*, where analyzing an antitrust case, the Supreme Court held that damages must be calculated in a manner that reflects the theory of liability. 569 U.S. at 37-38.

While Dr. Williams's opinion would comport with the Supreme Court's requirements if it were offered solely to demonstrate common damages[8], it is evident that Plaintiff intends to use that opinion to prove injury as well. It is a necessary element of Plaintiff's claims to demonstrate that some part of the undisclosed transaction fee was actually incurred by the borrower. Plaintiff intends to meet this burden via Dr. Williams's expert opinion that class members incurred 37% of the transaction fee associated with their loans rather than presenting evidence of how each merchant treated the transaction fee for each borrower. *See* ECF No. [161] at 6-9.

Plaintiff points out that the record demonstrates evidence of class-wide pass-through of Defendants' fees and argues that Dr. Williams used a well-accepted methodology for calculating pass-through costs, so there is "no sound basis for attacking Dr. Williams's conclusion that Defendants' fees are passed on to class members at a common rate. *Id*. Plaintiff cites *In re Disposable Contact Lens Antitrust,* 329 F.R.D. 336 (M.D. Fla. 2018), where the Court found that Dr. Williams's "before and after" "but for" regression analysis was sufficient to meet Plaintiff's burden of establishing predominance of impact of the alleged conduct, noting that "courts have accepted this regression analysis in antitrust class actions." *Id*. at 421. Plaintiff cites to other cases where Dr. Williams's regression analyses have been deemed sufficient, and those class actions are also antitrust cases. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004); *Olean Wholesale Grocery v. Bumble Bee Foods*, 31 F.4th 651, 683 (9th Cir. 2022).

---

[8] Plaintiff also argues that "individualized damages calculations are insufficient to foreclose … certification" ECF No. [161] at 3 (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016)). The Court certainly notes binding authority dictating that where there is a core liability question common to each class member, the need for individualized damage calculations does not necessarily preclude class certification. Here, however, the Court finds that there are individualized questions of liability precluding certification.

This case is distinguishable from an antitrust class action because the nature of an antitrust violation is a scheme that affects an entire market. It is therefore simpler to demonstrate impact and damages using a regressive analysis in an antitrust case because an entire market is affected by the complained of scheme. Plaintiff has not alleged a common scheme between merchants, only that Defendants encouraged merchants to treat the transaction fees like they would any other overhead. *See* ECF No. [161] at 4.

The Court did not find any cases in this Circuit, since the Supreme Court's decision in *Dukes,* outside of the Antitrust (or anti-competitive)[9] context where plaintiffs were deemed to have met their burden at the class certification stage by use of an expert's regressive analysis. In one case denying certification, a Racketeer Influenced and Corrupt Organizations Act ("RICO") case, that court noted that plaintiff "cites no case under the civil RICO statute where the court has approved the calculation of expectancy-type, benefit of the bargain damages using either a benchmark overcharge method or regression analysis, and the Court declines Plaintiff's invitation to blaze such a new trail." *Roberts v. The Scott Fetzer Co.*, 4:07-CV-80 (CDL), 2010 WL 3937312, at *11 (M.D. Ga. Sept. 30, 2010). This Court also declines to extend the application of regression analyses in this context.

The Court therefore agrees with Defendants. It would be impossible to adequately ascertain whether the potential class of borrowers were each affected in the same or a similar manner by Defendants' policies. This is particularly so since here, as in *Dukes*, an intermediary had discretion that ultimately affected the outcome. *See Dukes*, at 357. The Court does not find the multivariate

---

[9] The Court notes that outside of Antitrust law, it identified one case where the court certified a class where defendants allegedly engaged in captive-supply agreements to affect fed-cattle prices, in violation of the Packers and Stockyard Act. *Pickett v. IBP, Inc.,* CIV. 96-A-1103-N, 2001 WL 34886460 (M.D. Ala. Dec. 26, 2001). However, that claim is similar to an Antitrust action since it deals with the violation of a statute intended to prevent market-affecting schemes.

regression analysis sufficient to establish common proof that all class members were impacted by Defendants' transaction fees. Absent Dr. Williams's opinion, the Court remains unconvinced that the documentary and testimonial evidence Plaintiff asserts they will rely upon as common proof is sufficient to demonstrate that each potential class member actually incurred some part of the transaction fee charged to their merchant. Each merchant was left to decide whether, and in what portion, to pass the transaction fee onto the borrower which raises individual questions of fact important to deciding the viability of each class member's claims.

Accordingly, the Court finds that Plaintiff has not demonstrated commonality sufficient to warrant class certification.

### iii. Typicality

The typicality prong of Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla.*, Inc., 212 F.R.D. 602, 605 (S.D. Fla. 2003)). To demonstrate typicality, the plaintiff must generally show that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington*, 959 F.2d at 1569 n.8). Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams*, 568 F.3d at 1356-57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "If proof

of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at \*7 (S.D. Fla. Sept. 1, 2006) (quoting *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990)).

Plaintiff contends that he meets Rule 23(a)'s typicality requirement because "his individual claims are reasonably co-extensive with those of absent class members" since all arise from the same event, pattern, or practice and are based on the same legal theory. ECF No. [142] at 16 (citing *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017)). Defendants counter that (1) the named Plaintiff's claims are not typical of the claims of class members whose contracts contain arbitration clauses; and (2) the "resolution of Plaintiff's individual claim will not apply to any other putative class member." ECF No. [154] at 12-14. The Court considers each of Defendants' arguments.

### a.   Arbitration Clauses

Plaintiff contends that because Defendants "committed the same wrongful acts against Plaintiff and all members of the class, Plaintiff's claims are typical." ECF No. [142] at 16. For many of the same reasons Defendants argue that arbitration clauses in some of the loan agreements preclude a finding of commonality, Defendants now argue that the presence of arbitration clauses in some but not all of the proposed class members arbitration agreements "dooms any finding of typicality here." *See* ECF No. [154] at 12. Plaintiff similarly responds that even if there was proof of arbitration clauses in some of the loan agreements, arbitration clauses do not defeat class certification in this Circuit. *See* ECF No. [161] at 9-11. The Eleventh Circuit has held that an arbitration clause, not present in the class representative's contract, but present for many class members does not render the class representative atypical where there is a sufficient nexus between

the claims of the class representative and all class members. *In re Checking Account Overdraft Litigation*, 20-13367, 2022 WL 472057, at *5 (11th Cir. Feb. 16, 2022). The Court is therefore not persuaded by Defendants' argument that the presence of arbitration clauses in other class member's loan agreements precludes a finding of typicality.

### b. Resolution of Plaintiff's Claim

Plaintiff asserts that this case challenges Defendants' "standardized practice of brokering loans and collecting undisclosed fees – in contravention of Florida law – at the expense of the borrowers." ECF No. [142] at 16. As a challenge to a standardized practice, the resolution of Plaintiff's claim would be applicable to the resolution of the claims of all class members. Defendants respond that the evidence needed to prove Plaintiff's claims will not prove any other individual's claim. ECF No. [154] at 12. Specifically, Defendants assert that to prove his claim, Plaintiff would be required to prove that his contractor, the merchant who helped Plaintiff secure the loan through Defendants, actually passed some or all of the transaction fee to Plaintiff. *Id*. at 12-13. Defendants assert that the Court cannot simply assume that what Plaintiff's contractor did is proof that "each of the hundreds of other disparate Florida merchants in the GreenSky Program over a six-year period representing nearly 200,000 individualized transactions" acted the same way. *Id*. at 13. Plaintiff replies that because there is no indication that Defendants' practices changed over time, the same proof supports Plaintiff's and all other class members' claims equally. ECF No. [161] at 11. Plaintiff further contends that Defendants did not rebut the common evidence advanced by Plaintiff that supports Plaintiff's and every other class member's claims. *Id*.

The Court agrees with Plaintiff that the same claims and defenses are common to Plaintiff and all class members. All class members' claims are therefore brought under the same legal theory. "Although this legal theory may ultimately not be sustained by the evidence, it is typical

of the class…" and therefore meets the relatively low bar necessary to establish typicality. *See Williams*, 568 F.3d at 1357.

### iv. Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'encompasses two separate inquiries; (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class.").

Plaintiff contends that no conflict exists, that his interests and those of his counsel are aligned with those of the class, and that he and his counsel will continue to litigate this action vigorously on behalf of the class. ECF No. [142] at 16-17. Defendants respond that (1) Plaintiff is not adequate to represent individuals who agreed to arbitrate; (2) Plaintiff cannot fulfill the role of class representative because he does not understand the facts of the case and is relying on his counsel; and (3) Plaintiff is inadequate as he cannot seek injunctive relief because he has already

paid off his loan. ECF No [154] at 14-17. Defendants do not challenge the adequacy of Plaintiff's counsel.

### a.   Arbitration Clauses

Plaintiff and Defendants raise the same arguments regarding the presence of arbitration provisions in some, but not all, class member's loan agreements. For the reasons discussed above, the Court finds that Plaintiff is adequate to represent individuals who agreed to arbitrate.

### b.   Insufficient Participation and Awareness

Plaintiff indicates that Plaintiff has sat for deposition, responded to discovery, and diligently participated in the prosecution of this action. Defendants respond that Plaintiff demonstrates "insufficient participation in and awareness of the litigation" to serve as class representative. ECF No. [154] at 14-16. To support their contention, Defendants excerpt and paraphrase multiple portions of Plaintiff's deposition demonstrating that Plaintiff never read the entirety of his loan agreement, did not read the entire Complaint before it was filed, does not know the class definition, and is completely relying on his counsel to make decisions in the case. *Id*. at 15. Defendants provide citations to multiple cases, including one from this Court, that determined plaintiff's knowledge of and participation in the case were so lacking they each effectively abdicated all decision making to counsel. *See Butterworth v. Quick & Reilly*, 171 F.R.D.319, 323 (M.D. Fla. 1997); *Vision Const. Ent. Inc. v. Argos Ready Mix LLC*, 2019 WL 11075886, *13 (N.D. Fla. Nov. 7, 2019); *A Aventura Chiro. Care Ctr, Inc. v. BB Franchising LLC*, 2015 WL 11051056, *4 (S.D. Fla. Aug. 26, 2015); *Alhassid*, 307 F.R.D. at 700.

Plaintiff replies that a class representative does not need to have a firm or sophisticated understanding of the legal and factual bases for the case. ECF No. [161] at 12 (citing *Muzuco v. Re$ubmitIt*, LLC, 297 F.R.D. 504, 517 (S.D. Fla. 2013)). Plaintiff contends that he satisfies the

adequacy standard, having "devoted considerable time to this case, reviewing the complaint, responding to discovery, and sitting for a 6-hour deposition." Plaintiff also contends that he "understands the scope of the class" and "understands his role as a representative." *Id.*

The Court agrees with Plaintiff. Although it is evident from the deposition transcript that Plaintiff is unfamiliar with the nature of his claims, the record reveals that Plaintiff is playing an active role in the litigation. That Plaintiff is not well-versed on the intricacies of his case is not dispositive, but whether he has ceded all decisions to his counsel is. Here, because Plaintiff has offered personal knowledge of the facts underlying his claim and participated in the discovery process, the Court does not find that he is inadequate to represent the class because of insufficient participation and awareness. *See Muzuco*, at 517.

### c. Injunctive Relief

Plaintiff articulates that he, like every other member of the class, unknowingly paid a higher cost due to Defendants' fees and now seeks to remedy the harm by recouping those fees for himself and everyone similarly situated. ECF No. [143] at 17. Defendants argue that Plaintiff's inability to seek injunctive relief renders him inadequate. ECF No. [154] at 16. Count III of the First Amended Complaint requests injunctive relief. ECF No. [12] at 34-35. On October 27, 2021, the Court dismissed Plaintiff's claim for injunctive relief with prejudice. *See* ECF No. [56]. Defendants cite *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660 (S.D. Fla. 2009), where the Court explained that because the Plaintiff did not have standing to bring a claim for injunctive relief and the class members did, he was not an adequate class representative. *Id.* at 680-681. Plaintiff responds that the Court dismissed the claim for injunctive relief for all Plaintiffs and therefore the operative Complaint does not seek injunctive relief for any member of the class. ECF No. [161] at 12, n. 3. The Court's Order dismissing Plaintiff's claim for injunctive relief

specifically stated that because Plaintiffs "do not have standing to pursue injunctive relief, they cannot represent a class seeking injunctive relief under Rule 23(b)(2), and their class allegations on this claim must be dismissed as well." ECF No. [56]. Accordingly, the Court agrees with Plaintiff that there is no longer a claim for injunctive relief. Therefore, Defendant's argument is unavailing on this point.

### B. Rule 23(b)(3)

Even were the Court to find that Plaintiff satisfied all of the elements of Rule 23(a), Plaintiff fails to satisfy Rule 23(b)(3). To obtain class certification, Plaintiff must satisfy one of the three requirements enumerated in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiff seeks to certify the class under Rule 23(b)(3), *see* ECF No. [142] at 8, which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"That common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Terazosin Hydrochloride*, 220 F.R.D. at 694 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989)). "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson*, 130 F.3d at 1005 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Plaintiff argues that common questions predominate, and that common evidence will prove the claims of the class members. ECF No. [142] at 17-25. Defendants respond that common

evidence is insufficient, and damages issues are individualized. ECF No. [154] at 17. Defendants contend that for the same reason commonality is lacking, individual evidence predominates. Specifically, Defendants argue that the supposedly "hidden" transaction fee was prominently disclosed in Plaintiff's loan agreement and there is no evidence to suggest that every one of hundreds of merchants surcharged in whole or in part that transaction fee to the borrowers who would fall within the class definition as potential plaintiffs. ECF No. [154] at 17-18. Plaintiff replies that Defendants acknowledge that they collected fees on all loans and that the factual question of adequacy of disclosures goes to the merits of the case and not certification. ECF No. [161] at 3.

Plaintiff's failure to establish predominance mirrors his failure to establish commonality. The basic problem with the class action mechanism here is that only individualized evidence as to each borrower could prove that a particular borrower entered into a loan agreement with an undisclosed or hidden transaction fee, and/or that the particular borrower was forced to incur some portion of the hidden transaction fee in order to succeed on the merits. That factual context is not one in which common questions predominate.

Accordingly, Plaintiff has failed to meet his burden of satisfying the requirements of Rule 23(b)(3). Plaintiff does not seek class certification under Rule 23(b)(1) or (2). Therefore, class certification is not warranted, and the Court need not go further. *See Karhu,* 621 F. App'x at 946 (requiring the plaintiff to satisfy the requirements of Rule 23(b)(1), (2), or (3) for class certification).

Case No. 20-cv-62441-BLOOM/Valle

**C.  Request for Hearing**

As a final matter, Plaintiff requests a hearing. *See* ECF No. [142] at 26. Given the Court's

analysis above, the Court does not find a hearing to be necessary to address the issues presented.

As such, the Court denies Plaintiff's request for a hearing.

**IV.    CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class

Certification, **ECF Nos. [142] and [143]**, are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 28, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record